# THOMAS M. UNDERWOOD et al., *vs.* THE BOARD OF COUNTY SCHOOL COMMISSIONERS, Etc., ET AL.

*Schools—Letters Held Not to be a Resignation by a Teacher—Insuffi-
    cient Reason for Removal of Teacher—Powers of State Board of
    Education—Right to Salary by Teacher Improperly Removed.*

The principal of a county school wrote to the District School Trustees
    on December 23rd, 1903, announcing her approaching marriage and
    saying that she would continue to teach till the end of the scholastic
    year June 15th, 1904. On June 9th, 1904, she again wrote to the trus-
    tees saying : "If satisfactory to you I will teach another scholastic year."
    On August 13th, 1904, the trustees notified her that her resignation was
    accepted and appointed another person principal of the school. *Held*,
    that these letters do not constitute a resignation of the position and
    there was no vacancy which the trustees were authorized to fill by the
    appointment of a new teacher.

Code, Art. 77, sec. 49, provides as follows : . "Principal teachers shall be
    appointed by the Board of District School Trustees, subject to confir-
    · mation by the Board of County School Commissioners ; and said
    teachers may be removed at any time said Board of District School
    Trustees may think proper after thirty days notice in writing; provided
    further that the said Board of District School Trustees shall furnish in
    writing, when required by the teacher so notified, the reasons for dis-
    missal ; provided further that the right of appeal shall lie to the Board
    of County School Commissioners whose action in confirming or reject-
    ing the action of the district trustees shall be final." The district
    trustees of a school on September 9th, 1904, notified the principal
    teacher that her services would not be required after October 10th. She
    demanded the reasons for her removal and in September 10th, the
    trustees replied that they believed it "for the best interest of the
    school." *Held*, that this is not such a reason for the dismissal as is
    required by the statute.

*Held*, further, that although the removal of the teacher was confirmed on appeal by the Board of County School Commissioners, yet that board had the authority afterwards to withdraw its confirmation when notified by the State Board of Education that their action was erroneous ; and the provision in said section 49 that the action of the County Board in confirming or rejecting the action of the district trustees shall be final means only that it shall be final so far as the district trustees are concerned and was not designed to interfere with the powers vested in the State Board.

Code, Art. 77, sec. 11, directs that the State Board of Education shall cause the provisions of this Article to be carried into effect and shall decide, without expense to the parties concerned, all controversies and disputes that arise under it and their decision shall be final. *Held*, that the Legislature had the right to confer this visitorial power on the State Board.

When a teacher who has been wrongfully removed holds herself in readiness to teach and was unable to obtain other employment during the time she was so prevented from teaching, she is entitled to compensation during such period, and it makes no difference that another teacher was employed in her place.

Appeal from the Circuit Court for Prince Georges' County (MERRICK, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER, JONES and BURKE, JJ.

*F. Snowden Hill*, for the appellant.

*Charles H. Stanley* and *James C. Rogers*, for the appellees.

BOYD, J., delivered the opinion of the Court.

The appellants, as taxpayers of Prince Georges' County, filed a bill in equity against the Board of County School Commissioners of that county, the secretary and treasurer of the board and Mrs. Nalley, to enjoin the board and the secretary and treasurer from paying Mrs. Nalley any salary as principal teacher of a public school in that county, from October 10th, 1904, to January 10th, 1905, and from January 18th to February 1st, 1905, and to enjoin Mrs. Nalley from receiving the same. The Court granted a preliminary injunction and the board and Mrs. Nalley each filed a demurrer to the bill. The

demurrers were overruled but in the same order the injunction was modified and rescinded in so far as it restrained and forbade the board and the secretary and treasurer from paying any salary to Mrs. Nalley from January 18th, 1905, to February 1st, 1905. From the order modifying and rescinding the injunction as stated above, this appeal was taken by the plaintiffs, and from the order overruling the demurrer an appeal has since been taken by Mrs. Nalley.

The bill alleges that Messrs. Underwood and Johnson, two of the appellants, and Leroy C. Towles were appointed trustees of that school in May, 1900, and were reappointed for the years 1901 and 1902; that the three complainants were appointed trustees in May 1903, and again in May, 1904. The bill states that the trustees did not take any oath of office after May, 1900, but they organized and continued in discharge of their duties as trustees. In August, 1900, the trustees appointed Ella M. Queen principal of said school, and her appointment was duly confirmed by the commissioners. A "Teachers' Appointment Blank" is made part of the bill, and it is alleged that such form was used and properly executed. It contains a provision that "This contract is to continue from term to term, and from year to year, subject to revocation at any time by either of the parties thereto, giving the other 30 days' notice, in writing, to that effect, of which revocation due written notice must also be given to the County School Board." That contract was made prior to the change in the statute hereinafter referred to. Miss Queen continued as such teacher from year to year, and entered upon the discharge of her duties for the scholastic year 1903–1904, and while so acting, towit: on the 23rd of December, 1903, sent a letter to each of the three trustees telling them she was to be married on the 26th of that month, and on that date did marry Henry Nalley. In her letter to the trustees she said, "I will continue to teach until the end of this scholastic year, June 15th, 1904." On June 9th, 1904, she wrote to each of the trustees, "If satisfactory to you I will teach at this school another scholastic year. I have written my intention to each trustee. I trust my act

meets your approval." On August 13th, 1904, the trustees notified her in writing that her "resignation was accepted," and on the same day appointed Luella R. Polhemus principal of the school. Mrs. Nalley appealed to the County Board and it passed an order that "the board does not consider that she had resigned her school, and consequently the appointment of a new teach cannot be confirmed." The trustees, then, acting for themselves and also upon the advice of two of the commissioners, undertook to remove Mrs. Nalley by a written notice, which she received on or before September 9th, which said: "You are hereby notified that your services as teacher of the aforesaid school will not be required after the tenth of October, 1904. Said day being no less than thirty days from present date." She then required them to furnish her with the reasons for her removal, and on September 10th they wrote to her: "We the undersigned trustees of above-named school believe it for the best interest of the school that we notify you that your services as teacher of the aforesaid school will not be required after the tenth day of October, 1904."

She appealed to the County Board and on September 29th, 1904, it passed an order that the trustees be sustained and another order that the appointment of Miss Polhemus be confirmed. Mrs. Nalley then assumed charge of the school from the beginning of the scholastic year until October 10th inclusive, when she relinquished it and it was taken charge of by Miss Polhemus. Mrs. Nalley, in the presence of the district school trustees, entered an appeal to the State Board of Education, and the County Board forwarded to the State Board copies of the two letters sent to Mrs. Nalley by the trustees. The State Board without notice to the trustees or Miss Polhemus, of a hearing, passed a resolution as follows: "Resolved, That the words 'We the undersigned trustees of above-named school believe it for the best interest of the school' do not constitute reasons as provided for by sec. 49 of Art. 77 of the Code, and that the alleged notice was not in conformity with law." That was sent to the County Board by the State Board, and on January 3rd the County Board ordered that in view of

the action of the State Board the question be referred back to the trustees for a more specific reason for removal, and fixed January 17th for a hearing.   On that date the County Board passed an order that in view of the decision of the State Board, no further reason for the removal having been submitted by the trustees, the former action of the trustees in removing Mrs. Nalley and appointing Miss Polhemus "be and the same is hereby rescinded and Mrs. Nalley is recognized as the teacher of said school."   .

The bill then alleges that Mrs. Nalley forcibly took posession of the school on January 18th, against the protest of Miss Polhemus, and had retained possession up to the time the bill was filed, which was January 31st, 1905.   Miss Polhemus notified the County Board of Mrs. Nalley's action, stated her readiness to perform the duties and said she would take legal measures to recover the amounts due her.

The appellants contend that they are entitled to relief because:

1. The letter of Mrs. Nalley of December 23rd, 1903, was a resignation, that said resignation was duly accepted by the trustees and she was never afterwards appointed or recognized by them.

2. That if that be not correct, she ceased to be the teacher after October 10th, 1904, and that Miss Polhemus became the principal on October 11th, and they claim that the action of the State Board and that of the County Board subsequent thereto were beyond their powers.

*First.* It seems perfectly clear to us that the letter of December 23rd, 1903, was not a resignation.   It only said "I will continue to teach until the end of this scholastic year, June 15th, 1904."   It was very proper to give notice to the trustees, not only of her contemplated marriage, but of her intention to continue teaching until the end of the year, as otherwise they might have been in doubt on that subject. But before any action was taken on what the trustees treated as a resignation she wrote the letter of June 9th, which should have removed any question about it.  . The County Board; by

its order of August 23rd, expressly said that it did not consider that Mrs. Nalley had resigned and refused to confirm the new appointment. So there can be no question that Miss Polhemus acquired no rights by reason of the supposed resignation by Mrs. Nalley, as principal teachers appointed by the trustees must be confirmed. Sec. 53 of Art. 77 of Code of 1904; *School Board* v. *Wagaman*, 84 Md. 151.

*Second.* Was the notice of the trustees of September 8th, in connection with their letter of September 10th, 1904, sufficient to remove Mrs. Nalley on October 10th? Sec. 53 of Art. 77 provides that "said teachers may be removed at any time said Board of District School Trustees may think proper, after thirty days' notice in writing; provided further, that the said Board of District School Trustees shall furnish, in writing, when required by the teacher so notified, *the reasons for dismissal.*" This section in the Code of 1888 provided that the teacher "may be removed at any time said board may think proper, after thirty days' notice to the teacher in writing." Chapter 460 of the Acts of 1902 amended it in the terms used in the present Code, excepting the word "requested" was used instead of "required." The first part of the section in the Code of 1888 and in the Act of 1902 provided that "*Teachers* shall be appointed by the Board," etc., and the Act of 1904, ch. 584, changed that to "*Principal teachers,*" etc., and we suppose that was the reason for passing the Act of 1904. It will be observed therefore that the Acts of 1902 and 1904 made a material change in the law, and it cannot be doubted that it was a wise one, for if trustees could remove a teacher without furnishing reasons for the dismissal, it might seriously, and very injuriously, affect a perfectly competent teacher. Unless the reasons are given, the public may think it was because the teacher was incompetent, or possibly it might affect the standing of such teacher in other respects. Therefore when the Legislature made this change in the law it meant something, and could not be complied with by such a reply as was given by these trustees—we "believe it for the best interest of the school." That might be because the

teacher was incompetent, not sufficiently educated, bad tem-
pered, unhealthy, of questionable character, of some political
or religious faith not satisfactory to the trustees, or for one or
more of many reasons that might be suggested.   Mrs. Nalley
acted promptly in calling for reasons, and the County Board
ought to then have required them to be given.   The letter of
September 10th furnished none, other than might have been
read into the notice of September 8th, for if the trustees had
a proper conception of their duties it would be presumed that
they believed it was for the best interest of the school that she
be notified, else they would not have done it—but *why* they
did so believe, this statute required them to disclose, when
called upon by the teacher.

But it is contended by the appellants that on the appeal to
the County Board it sustained the trustees, and that under
section 53 its "action in confirming or rejecting the action of
the district trustees shall be final."   It is difficult to see how
the appellants can consistently contend that the County
Board could not reverse its former action, for the only ap-
pointment of Miss Polhemus that was ever made was the one
of August 13th, 1904, which the County Board on appeal re-
jected on August 23rd.   If, therefore, the County Board
could on September 29th confirm an appointment it had re-
jected on August 23rd, on the ground that there was then no
vacancy, surely it could rescind a previous order which had
worked manifest injustice, and which, upon further reflection,
would be seen by the board to have been erroneous.   There
was no vacancy on September 29th.   The trustees had
notified Mrs. Nalley that her services would not be required
*after October 10th*.   Under the statute they could not remove
her until *after* thirty days notice in writing.   If they ever did
remove her *after* thirty days from September 8th, when the
notice was dated, the bill does not say so, and yet the County
Board confirmed Miss Polhemus twelve days before the notice
had expired.   It cannot be doubted that the trustees could
have withdrawn the notice at any time before the 10th of
October.   But the statement in the statute that the action of

the County Board shall be final manifestly only meant that it was final so far as the trustees were concerned, and did not intend that the powers vested in the State Board should be interfered with.

There can be no doubt that the State Board had power to *advise* the County Board, and that it was the duty of the latter to follow the advice of the State Board on the subject. By sec. 11 of Art. 77 it is provided that "The State Board of Education shall, to the best of their ability, cause the provisions of this Article to be carried into effect  *  *  *  they shall explain the true intent and meaning of the law, and they shall decide without expense to the parties concerned all controversies and disputes that arise under it, and *their decision shall. be final.*" Again, section 12 provides that "They shall have the general care and supervision of the public school interests of the State; shall act as assistants and advisers of the various County Boards; and shall from time to time issue circular letters to teachers and commissioners on topics connected with the administration of public schools." So regardless of the question whether there was, technically speaking, an appeal from the action of the County Board in this matter, it forwarded to the State Board copies of the letters of the trustees to Mrs. Nalley, which was all that was necessary for them to have, to determine that question, and the State Board by its resolution explained "the true intent and meaning of the law," and advised the County Board of its action, which in our opinion was unquestionably correct.

Nor have we any doubt about the right of the Legislature to confer such powers on the State Board. The visitorial powers of that Board are referred to at some length in *Wiley* v. *School Commissioners*, 51 Md. 401. In *Shober* v. *Cochrane*, 53 Md. 544, which was a contest between them for the office of secretary, treasurer and examiner of the Board of School Commissioners, the validity of the statute vesting such powers in the State Board was vigorously assailed, but fully sustained by JUDGES ALVEY and MOTTER below, and by this Court on appeal. If two contestants for such an office as that were

bound by the decision of the State Board, surely it has the power to determine which of two persons shall be recognized as a teacher of a school. And it is right that such controversies should be settled by some tribunal connected with the public school system. When one applies for the position of a teacher in a public school he makes himself subject to the laws governing them. This case illustrates the importance of keeping such questions out of the Courts. It must have been very injurious to this school to have such a controversy, and great confusion was caused by the conflicting actions of the trustees and the County Board. It is well therefore that there is a tribunal having jurisdiction over the State to settle such controversies and to guide the County Boards in the discharge of their duties. Of course there may be occasions when it is proper and necessary to apply to the Courts, as in *Duer* v. *Dashiell*, 91 Md. 660, where a purely legal question was involved, and it may sometimes be necessary to have the process of a Court to enforce a decision of the State Board of Education. If Shober had retained possession of the office after the State Board had decided in favor of Cochrane, and the latter had applied for a *mandamus*, his right to such writ would have been altogether different from that of Shober, who applied for it after the State Board had decided against him.

· What we have already said disposes of the question whether Miss Polhemus became principal on October 11th, and it will be unnecessary to further discuss the appeal by the plaintiffs as we think they have no reason to complain of the Court's action.

After the present (January) term began an appeal by Mrs. Nalley from the order overruling the demurrer was brought to this Court, and the attorneys for the parties have filed an agreement that the two appeals be heard together, and requested us to do so. Under the circumstances we thought it proper to grant the request, in order that the controversy might be brought to an end.

From what we have already said, it will appear that we are of opinion that the trustees could not properly terminate Mrs.

Nalley's employment by the letters of September 8th and September 10th, 1904, and that by the action of the State Board, and the subsequent action of the County Board, she was continued as the principal teacher of this school.    It was not her fault that she relinquished the school from October 10th until January 18th.    She took steps at once to have the action of September 29th corrected, and does not appear to have been responsible for any delays.    If, therefore, she held herself in readiness to teach, and was unable to obtain other employment during that period, she should not be deprived of the compensation she was entitled to, merely because the County Board paid or agreed to pay Miss Polhemus, who was not legally selected as teacher of this school.    It would therefore be inequitable to enjoin the County Board from paying Mrs. Nalley and her from receiving payment for the period spoken of.    She and the County Board should, if possible, adjust the salary for that time on some proper and equitable basis, but the injunction should not be continued against her, and the demurrer to the bill should have been sustained, and the bill dismissed.    In view of the conclusions we have reached on the main questions, it is not necessary to determine the effect of the trustees not taking the oath, but will only add that sec. 7 of Art. 77 expressly requires them to do so, and the County Boards should see that they comply with the provisions of the law before entering upon their duties.    As the County Board was also in fault, we will direct the costs to be paid by the appellants in No. 65 (office docket) and the County Board.

> *Order affirmed in part and reversed in part, and bill dismissed, one-half of the costs to be paid by the appellants in No. 65 (office docket), and the other half by the Board of County School Commissioners of Prince Georges' County.*

(Decided February 15th, 1906.)