OTWAY B. ZANTZINGER, R. HUGH PERRIE AND
VIRGIL M. LAWRENCE, ACTING AS THE BOARD
OF SCHOOL COMMISSIONERS OF PRINCE GEORGE'S
COUNTY, FREDERICK SASSCER AND
KIRTLEY J. MORRIS

*vs.*

ROGER I. MANNING.

*Public schools: high schools; teachers and principals; County
School Commissioners, and State Board of Educa-
tion; jurisdiction; appeal.*

The question of which of two persons shall be recognized as a
teacher of a school is one involving the proper administration
of the public school system, and is a dispute over which the
State Board of Education has jurisdiction under sec. 11 of Art.
77 of the Code.                                pp. 177, 181

The control of high schools by the County School Commis-
sioners, and their authority to appoint the principals of said
schools is subject to the provision of the Public School Law,
and to the summary and comprehensive visitorial power con-
ferred by that law upon the State Board of Education.
                                               p. 181

Where the reasons assigned by School Commissioners for the
dismissal or removal of the principal of a high school, have
been filed with the State Board of Education and the case tried
and evidence submitted and the board decides that the reasons
so assigned are insufficient, the determination by the School

Board is final and it is the duty of the School Commissioners to follow the board's decision; and from such decision of the board no appeal to the courts will be allowed.                    p. 182

In such a case where the State Board of Education refuses to reopen the case, its decision is not subject to review by the Circuit Court or by the Court of Appeals.                    p. 182

*Decided March 19th, 1914.*

Appeal from the Circuit Court for Prince George's County. (BEALL, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*James G. Boss* and *Redmond C. Stewart,* for the appellants.

*Ogle Marbury and Edgar Allan Poe, the Attorney-General* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for Prince George's County directing a *mandamus* to issue commanding the Board of County School Commissioners and the County Superintendent of said county to reinstate the appellee as principal of the Laurel High School, and commanding Kirtley J. Morris, one of the appellants, to surrender said office to the appellee.

The petition filed in the Court below by the appellee alleges that he had been a duly qualified teacher of the public schools of Prince George's County for thirty years; that he

held a life certificate from the State Board of Education (hereinafter referred to as the State Board), and for the last fourteen years has been principal of the Laurel High School, a county high school located in the town of Laurel, in said county; that during the summer of 1912 certain citizens of Laurel, and certain other citizens of Laurel who had been named by the Board of County School Commissioners (hereinafter referred to as School Commissioners), as a "local advisory board for the Laurel High School," filed with the School Commissioners and the County Superintendent a petition asking for an investigation of said school; that he filed an answer to said petition and that the matter was set for a hearing on August 6th, 1912, and after a hearing was disposed of by an order of the School Commissioners to the effect that it did not appear, after a hearing, of which all parties concerned had due notice, "that a further investigation of the condition of the Laurel High School is feasible or necessary at this time," that after said order was passed by the School Commissioners the petitioner continued to discharge his duties as principal of said school, and that on the 16th of June, 1913, he received from the superintendent a letter dated June 13th, 1913, notifying him that the School Commissioners had on the 10th of June, 1913, passed an order as follows: "Ordered that the secretary be authorized by the board to give Mr. Roger I. Manning, principal of the Laurel High School, formal notice that his services will not be needed for the next scholastic year"; that said action by the School Commissioners "had been taken after your petitioner had been exonerated from all charges as above set out and without giving him an opportunity to appear before said defendants in his own behalf. That no charge of any kind or character had been filed against him by anyone whatsoever. No trial was had. That he had no opportunity to find out before hand, the reasons for said alleged dismissal, and that it purported to be a peremptory discharge"; that the petitioner, relying upon the public school laws of the State and

the decision of the State Board, within ten days after the receipt of the above notice requested the School Commis-sioners to furnish him a statement in writing of the reasons for his dismissal, and that on or about the 1st of July, 1913, the School Commissioners, in compliance with his said request sent his counsel the following letter:

"UPPER MARLBORO, MD., July 1, 1913.

*Ogle Marbury, Esq.,*

 *Counsel for Roger I. Manning,*

  *Baltimore Md.*

DEAR SIR:—In reply to your letter of June 18th, 1913, to the Board of County School Commissioners of Prince George's County, requesting a statement in writing of the reasons of the Board for its action in terminating Mr. Manning's services as Principal of the Laurel High School, we have to say that the action of the Board was for the following causes and reasons:

1. That there is a general lack of harmony and co-operation between the principal and the assistant teachers of the Laurel High School.

2. That there is apparent considerable dissatisfaction with the conduct of the Laurel High School, on the part of many patrons and many citizens of the town of Laurel having children of High School age.

3. That Mr. Manning lacks the necessary adminis-trative ability so to conduct the school, as to obtain the harmony, co-operation and confidence of the patrons, citizens and assistant teachers, and to promote the highest efficiency of the school.

4. That by reason of these facts, many children do not complete the course, many are sent elsewhere to school who would otherwise attend the Laurel High School and the school fails to attain that degree of effi-ciency necessary for a proper fulfillment of its object and to inspire among the pupils that spirit of enthus-

iasm, emulation and co-operation and regard for discipline essential to a successful school.

Very truly yours,

O. B. ZANTZINGER, *President.*

R. HUGH PERRIE,

VIRGIL M. LAWRENCE.

FREDERICK SASSCER,

*Superintendent."*

The petition further alleges that the petitioner, within ten days after the receipt of said letter, filed with the School Commissioners an order to enter an appeal to the State Board, and within the same time filed his petition with the State Board, alleging that the reasons assigned by the School Commissioners for his dismissal were insufficient and untrue, and praying for an opportunity to present his case and evidence in support thereof to the State Board; that immediately after furnishing the written statement of the reasons for his dismissal. the School Commissioners, "without considering his right to appeal to the State Board, passed certain orders declaring the principalship of Laurel High School vacant and attempting to appoint Kirtley J. Morris, defendant herein, principal of said high school"; that on or about the 27th day of August, 1913, the State Board "at a duly called and organized meeting in Annapolis, Maryland, took up, at a public hearing, the matter of the above mentioned appeal of your petitioner, and after giving the same full and due consideration and after hearing considerable evidence presented by both sides, your petitioner and the said commissioners being present in person and by counsel," sustained the petitioner's appeal, and held the action of the School Commissioners in dismissing the petitioner to be void in the following order:

"The petition of Roger T. Manning is hereby sustained, the Board holding that the four reasons contained in a letter dated July 1, 1913, to Ogle Marbury, Esq.. counsel for the said Manning, * * * are insufficient in law, except Number 3, the Board holding that the proof submitted does not sustain the charge set out in said reason Number 3."

The petition then alleges that notwithstanding the passage
of said order of the State Board the School Commissioners
refused and still refuse to recognize the petitioner as the prin-
cipal of said high school, and continue to recognize the said
Kirtley J. Morris as principal of said school; that on the 9th
of September, 1913, the School Commissioners petitioned the
State Board to reopen said case, and at a meeting of the
State Board on the 24th of September, 1914, the State Board
heard said petition, at which hearing the petitioner and the
School Commissioners were represented by counsel, and
passed the following order refusing to reopen the case:
"Whereas no reasons for a reopening of the case have been
submitted to this Board justifying such reopening, the peti-
tion therefor is hereby refused"; that notwithstanding said
orders of the State Board, the School Commissioners, the
Superintendent and the said Kirtley J. Morris refuse to rec-
ognize the petitioner as principal of said school, and refuse
to permit him to perform the duties of principal thereof, or
to enter the school building, and that the said Morris is now
in possession of said office.

The answer of the School Commissioners, the Superintend-
ent and Kirtley J. Morris admits all the material facts al-
leged in the petition, but they deny that the order passed by
the School Commissioners on the 6th of August, 1912, "com-
pletely exonerated the petitoner of the charges made against
him," and alleges that notwithstanding the School Commis-
sioners permitted the petitioner to continue to discharge the
duties of principal of said school, they were satisfied from
the evidence produced at said hearing that the petitioner
should not be allowed to continue as principal of said school,
and that the School Commissioners instructed the Superin-
tendent to inform the petitioner that while he would be per-
mitted to act as principal during that year his resignation
would be expected at the end of that year; that the Superin-
tendent did so notify the petitioner, some months before the
expiration of the year and that as the resignation of the peti-

tioner was not sent to the School Commissioners, they passed
the order referred to notifying him of his removal. The
answer further alleges that the place of the hearing by the
State Board was changed, and that they did not get notice of
such change in time to secure the attendance of all of their
witnesses; that at said hearing their counsel earnestly urged
that the State Board had no jurisdiction to interfere with
the School Commissioners in the exercise of their discretion
in dismissing the petitioner; that after the order of the State
Board, sustaining the appeal of the petitioner, they, the de-
fendants, petitioned the State Board to reopen the case; that
the State Board notified them that a rehearing would be held
on the 24th of September, 1913, and that on the day fixed for
the rehearing they appeared before the State Board with
their counsel and a number of witnesses but that the State
Board then informed counsel that they would "hear counsel
on the question of whether such rehearing should be given,"
and that after hearing counsel the State Board passed the
order declining to reopen the case; that the School Commis-
sioners are by law vested with the power of appointing high
school teachers and power to remove such teachers for legally
sufficient reasons; that the exercise of their discretion in re-
moving a teacher is not subject to review or control by the
State Board or by the Court, and that their order removing
the petitioner was a valid exercise of their discretion and
conclusive as to all parties.

The petitioner demurred to the answer. The Court below
sustained the demurrer, and ordered the writ to issue as we
have stated.

The State Board having reviewed the action of the School
Commissioners in dismissing the appellee, and having sus-
tained his petition, the important questions are, (1) had the
State Board the authority to do so, and (2) is the petitioner
entitled to the process of a Court to enforce its decision.

Section 55 of Article 77 of the Code of 1912 provides that,
"Principal teachers shall be appointed by the Board of Dis-

trict School Trustees, subject to confirmation by the Board of
County School Commissioners; that said teachers may be re-
moved at any time said Board of District School Trustees
may think proper, after thirty days' notice in writing; pro-
vided further, that the said Board of District School Trus-
tees shall furnish in writing, when required by the teacher
so notified, the reasons for dismissal; provided, further, that
the right of appeal shall lie to the Board of County School
Commissioners, whose action in confirming or rejecting the
action of the district trustees shall be final," and by section
25 of the same article it is provided that the School Commis-
sioners "shall, after advising with the principal of a school
to which the teacher is to be appointed, appoint all assistant
teachers." Section 120 of Article 77 of the Code of 1904
made it the duty of the School Commissioners when any elec-
tion district presented to them a building for a high school in
the district to accept the same, and to thereafter provide for
the maintenance of the high school, and the salaries of
teachers, out of the general school fund, and section 121 of
the same Article of the Code of 1904 required the School
Commissioners, whenever a high school was established in a
district, to appoint three persons, who should constitute a
board of high school commissioners and exercise the same
authority over the high school as was exercised by the Board
of District School Trustees. The last mentioned sections
were repealed and re-enacted by the Act of 1910, Chapter
386 (p. 228), providing for the establishment of high schools,
and by section 120 as re-enacted (now sec. 125 of the Code of
1912), it is provided: "The Board of County School Com-
missioners of any county shall have authority to establish
high schools, subject to the approval of the State Board of
Education, in their respective counties, when, in their judg-
ment, it is advisable to do so. All high schools so established
and those now in operation shall be under the direct control
of the several Boards of County School Commissioners, sub-
ject to the provisions of this article," &c., and section 7 of

Article 3 of the By-laws, Rules and Regulations enacted by the State Board of Education, and which are given the force of law, declares that it shall be the duty of the Board of County School Commissioners "to appoint the principals of all high schools, and, after advising with the principal of a school where an assistant or assistants are employed. to appoint all assistant teachers."

From these provisions of the law it appears that while the principal teachers of district schools are appointed by the district trustees, subject to confirmation by the School Commissioners, the School Commissioners have direct control of high schools, and authority to appoint the principal and assistant teachers thereof.

The public school law of the State makes no provision for the removal or dismissal of principal or assistant teachers of high schools, and the appellants contend that the power of removal is incident to the power of appointment, and as the law does not provide for an appeal from an order of the School Commissioners removing or dismissing a teacher of a high school, the matter rests entirely within their discretion and that the exercise of that discretion is not subject to review or control.

It will be observed, however, that the control given to the school commissioners of high schools is declared to be "subject to the provisions of this article," and section 11 of that article provides that, "The State Board of Education shall, to the best of their ability, cause the provisions of this article to be carried into effect, and may, if necessary, institute legal proceedings for that purpose with the direction and advice of the Attorney-General; they shall enact by-laws for the administration of the public school system not at variance with this article, which when enacted and published shall have the force of law; they shall have the power to suspend or remove any county superintendent who may be found inefficient or incompetent for the discharge of duties assigned him, or guilty of such moral delinquency as unfits him for the office

he holds; they shall explain the true intent and meaning of
the law, and they shall decide without expense to the parties
concerned all controversies and disputes that arise under it,
and their decision shall be final."

The power thus conferred upon the State Board has been
declared by this Court to be a "visitatorial power of the
most comprehensive character," and one that is, "in its na-
ture, summary and exclusive." In the case of *Wiley* v. *School
Commrs.,* 51 Md. 401, the bill was filed by the complainants
as citizens and taxpayers, and also as trustees of a district
school against the School Commissioners to enjoin the use of
a district school house as a high school building, and the
Court, after disposing of their right to relief as taxpayers,
said, in reference to their claim as trustees: "The statutes
under which the present school system of the State is organ-
ized have provided the mode and the agency for settling all
such questions as this without resort to the Courts," and,
after referring to the nature of the visitorial power conferred
upon the State Board said further: "And it may be added,
that such power is not more useful and convenient to colleges
than other well organized educational establishments. If every
dispute or contention among those entrusted with the admin-
istration of the system, or between the functionaries and the
patrons or pupils of the schools, offered an occasion for a re-
sort to the Courts for settlement, the working of the system
would not only be greatly embarrassed and obstructed, but
such contentions before the Courts would necessarily be at-
tended with great costs and delay, and likely generate such
intestine heats and disvisions as would, in a great degree,
counteract the beneficient purposes of the law. It is to ob-
viate these consequences that the visitatorial power is con-
ferred; and wherever that power exists, and is comprehen-
sive enough to deal with the questions involved in an existing
controversy, as in the case here, Courts of equity decline to
interfere, and leave the parties to abide the summary decision
of those clothed with the visitatorial authority." In the case

of *Shober* v. *Cochrane,* 53 Md. 544, there was an application
for a writ of mandamus to compel John W. S. Cochrane not
to interfere with or prevent the petitioner from discharging
the duties of secretary, treasurer and examiner of the Board
of County School Commissioners of Allegany County, &c.
The State Board had previously determined that Mr. Coch-
rane was the "legal secretary," &c., of the School Commis-
sioners, and the lower Court (ALVEY and MOTTER, JJ.,)
refused the writ. On appeal the Court held that "the power
to decide the matter in dispute was vested in the State Board
of Education, and that its decision thereon was final and con-
clusive." The case of *Underwood* v. *School Board,* 103 Md.
181, is directly in point. There the trustees of a public
school undertook to remove a teacher, Mrs. Nalley, and to
appoint a teacher in her place. Mrs. Nalley appealed to the
School Commissioners and they sustained the action of the
trustees and passed an order confirming the appointment of
the other teacher. Mrs. Nalley appealed to the State Board
and the State Board passed a resolution to the effect that the
grounds assigned by the trustees for the removal of Mrs.
Nalley were not sufficient. The School Commissioners, upon
the failure of the trustees to file more specific reasons for her
removal, passed an order "rescinding" the former action of
the trustees, removing Mrs. Nalley and appointing the other
teacher, and recognizing Mrs. Nalley as the teacher of said
school. A bill was then filed in equity against the School
Commissioners the Superintendent and Mrs. Nalley to en-
join the School Commissioners from paying Mrs. Nalley's
salary as teacher and to enjoin Mrs. Nalley from receiving
the same, and from the order granting the injunction, &c.,
the defendants appealed. This Court, speaking through
JUDGE BOYD, said. "There can be no doubt that the State
Board had power to *advise* the County Board, and that it was
the duty of the latter to follow the advice of the State Board
on the subject." After referring to the provisions of the Code
we have quoted, the Court said further: "So regardless of
the question whether there was, technically speaking, an ap-

peal from the action of the County Board in this matter, it forwarded to the State Board copies of the letters of the trustee to Mrs. Nalley, which was all that was necessary for them to have, to determine that question, and the State Board by its resolution explained 'the true intent and meaning of the law,' and advised the County Board of its action * * *.

"Nor have we any doubt about the right of the Legislature to confer such powers on the State Board. The visitorial powers of that board are referred to at some length in *Wiley* v. *School Commissioners,* 51 Md. 401. In *Shober* v. *Cochrane,* 53 Md. 544, which was a contest between them for the office of secretary, treasurer and examiner of the Board of School Commissioners, the validity of the statute vesting such powers in the State Board was vigorously assailed, but fully sustained by JUDGES ALVEY and MOTTER below, and by this Court on appeal. If two contestants for such an office as that were bound by the decision of the State Board, surely it has the power to determine which of two persons shall be recognized as a teacher of a school. And it is right that such controversies should be settled by some tribunal connected with the public school system. When one applies for the position of teacher in a public school he makes himself subject to the laws governing them."

We have referred to the last mentioned case at some length because there, as in this case, the question determined by the State Board was which of two persons was to be recognized as the teacher of a school. The statute did not provide for an appeal to the State Board, and what is now section 55 of the Code of 1912 declared that the decision of the School Commissioners should be final. But the authority of the State Board to decide the question and to advise the School Commissioners was held to rest upon the provision of the law conferring upon the former the visitorial power referred to, and JUDGE BOYD said that section 55 only meant that the decision of the School Board should be final as to the trustee.

The appellants rely upon the cases of *Duer* v. *Dashiell,* 91 Md. 660, and *School Commissioners* v. *Henkel,* 117 Md. 97.

In the first of those cases the law under which the School Commissioners were appointed was repealed, and the question involved was the effect of that repeal upon the tenure of office of those appointed by the School Commissioners while they were in office. In that case JUDGE SCHMUCKER said: "Both *Wiley's* and *Shober's case* were disputed between functionaries of the department of public education over which it was the purpose of section 11 of Article 77 of the Code, to give the State Board of Education jurisdiction. * * * The real issue in this case is not one involving the proper administration of the public school system, but it is a question of the legal effect of the passage by the Legislature of the Act of 1900, Chapter 29, upon the status of subordinate officials appointed by a school board which that Act legislated out of office." In *Henkel's case* JUDGE PATTISON said: "In this case the question involved is the effect of the passage of Chapter 584 of the Acts of 1904 upon sections 16, 17 and 18 of Chapter 275 of the Acts of 1896, and upon the determination of it depends whether the aforesaid sections of Chapter 275 of the Acts of 1896 are still in force and operative and are to be followed by the appellant in this case in the filling of the vacancies in the local board of trustees hereinbefore mentioned.

"In this case, as in the *Duer* v. *Dashiell case,* the real issue is not one involving the proper administration of the public school system, but is a purely legal question."

In each of those cases, therefore, the Court distinctly held that the issue presented was not one involving the proper administration of the public school system. In the case at bar the dispute is "between functionaries of the department of public education"; the question to be determined is "which of two persons shall be recognized as a teacher of a school," and the issue is clearly one involving the proper administration of the public school system. The School Commissioners' control of high schools, and their authority to appoint the principals of said schools is subject to the provisions of the public school law of the State, and to the summary and com-

prehensive visitatorial power conferred by that law upon the State Board. The reasons assigned by the School Commissioners for the dismissal or removal of the appellee were filed with the State Board. The case was tried, evidence was submitted, and the issue, involving, as it did, the proper administration of the public school system, was determined by that board. It was the duty of the School Commissioners to have followed that decision, and the appellee is entitled to the process of a Court to enforce it. *Underwood* v. *School Board, supra.*

The determination of the State Board in such cases is final, and the Courts have no authority to pass upon the merits of the controversy for the purpose of affirming or reversing their decision. The statute requires the State Board to decide all controversies arising under the public school law without expense to the parties concerned, and the wisdom of that legislation is illustrated in this case. Such controversies in the Courts not only greatly embarrass the orderly and successful administration of the public school system, but impose heavy burdens and costs upon the parties interested.

Nor can we review the action of the State Board in refusing to reopen the case. The answer of the appellants states that the State Board heard counsel "on the question of whether such rehearing should be given," and thereafter passed the order deciding that no sufficient reason had been submitted for reopening the case. That decision is not subject to review by the Court below or by this Court.

For the reasons stated we must affirm the order from which this appeal was taken.

*Order affirmed, with costs to the appellee.*