BOARD OF EDUCATION OF HOWARD COUNTY v.
JAMES R. McCRUMB

[No. 46, September Term, 1982.]

*Decided October 6, 1982.*

The cause was argued before GILBERT, C. J., and MORTON and MOYLAN, JJ.

*Charles A. Reese,* with whom were *Kay B. Partridge, Reese & Carney, Paul M. Nussbaum* and *Reichelt, Nussbaum, Brown & Topf* on the brief, for appellant.

*Susan W. Russell,* with whom were *Walter S. Levin* and *Sauerwein, Boyd, Decker & Levin* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

We are here asked to review determinations made and actions taken by the Howard County Superintendent of Schools, the Howard County Board of Education, the Maryland State Board of Education, and ultimately the Circuit Court for Howard County. Our inquiry, like that of the circuit court, is limited to ascertaining whether the final action of the State Board of Education was arbitrary or capricious.

On October 1, 1977, James R. McCrumb, a tenured employee of the Howard County Board of Education and for the preceding ten years principal of Mt. Hebron High School, was witness to a potentially. explosive scene between predominantly white students of Mt. Hebron and black parents of a rival visiting football team who were blocking the students' paths to their cars after the game. When McCrumb's initially restrained efforts to disperse the crowd were met with the adults' abusive remarks, McCrumb told his own students to leave and "let these people act like assholes if they care to." Although McCrumb immediately apologized for this less than felicitous choice of words, there were, it seems, lasting repercussions.

McCrumb received a telephone call the next evening and was told that the superintendent wished to see him in the morning to discuss the incident. On October 3, the first working day after the incident, the Superintendent of Schools for Howard County, after orally advising McCrumb of the charges against him, gave him written notice that he was forthwith suspended without pay for five days because of his admitted "use of inappropriate language in the presence of students and parents." The superintendent presumably acted under the authority of Md. Ann. Code (1957, 1975 Repl. Vol.) art. 77, § 62,[1] which section authorizes the county superintendent to "suspend [principals and other county certified personnel] for cause and recommend them

---

1. Acts of 1978, ch. 22, § 1, effective July 1, 1978, repealed art. 77, § 62 and reenacted it without substantial change as Md. Ann. Code (1978), § 6-201 (b) of the Education Article.

for dismissal in accordance with the provisions in § 114."[2]

McCrumb appealed to the Board of Education of Howard County, arguing that under § 114,[3] there could be no suspension until a hearing was held before the county board of education and that, in any event, the penalty imposed was inappropriate under the facts and circumstances of the case. Section 114 authorizes the county board of education

> "on the recommendation of the county superintendent of schools [to] suspend or dismiss any teacher, principal, supervisor, assistant superintendent, or other professional assistant for [among other things] misconduct in office . . . provided that the charge or charges be stated, in writing, to such person and that such person be given an opportunity to be heard by the said board of education upon not less than 10 days' notice; that such person be allowed to bring counsel and witnesses, if so desired; and provided further that an appeal from the board's decision may be made to the State Board of Education."

The county board, in its initial decision and order dated March 28, 1978, concluded that the summary procedure followed by the superintendent was a permissible exercise of his § 62 authority to suspend with cause, which authority was wholly independent of the more circumscribed authority conferred by § 114. It did, however, grant a hearing for the purpose of determining whether the superintendent, in

---

2. Article 77, § 62 provides in full:

"The county superintendent of schools shall nominate, for appointment by the county board of education, all principals, all teachers, and all other certified personnel. He shall assign them to their positions in the schools, transfer them as the needs of the schools require, recommend them for promotion, suspend them for cause, and recommend them for dismissal in accordance with the provisions in § 114 of this article."

3. Acts of 1978, ch. 22, § 1, effective July 1, 1978, repealed art. 77, § 114 and reenacted it without substantial change as Md. Ann. Code (1978), § 6-202 of the Education Article.

meting out the five day suspension, acted in an arbitrary or capricious fashion. On July 11, 1978, the board issued an amended decision and order. Although the first decision was reaffirmed in all respects, the board noted an additional issue, in light of a recent Attorney General's Opinion, of the adequacy of a "hearing" before the superintendent. After a hearing on the matter, the board, in its final decision and order issued September 25, 1978, made these findings of fact: that the superintendent reviewed with McCrumb the facts alleged at which time McCrumb admitted having made the statement; that he had the opportunity to give his version of the incident; that McCrumb was presented with an accusatory letter written by angry parents, although he was not allowed to confront them directly; that McCrumb, when asked by the superintendent whether he wanted a hearing before the county board on the suspension, replied that he did not; that McCrumb was not asked if he wished to be represented by counsel and was not, in fact, so represented. Based on these facts the board concluded that McCrumb's statement was inappropriate and that the superintendent's action was authorized and justified. The record shows that McCrumb had sufficient notice of the charges in the telephone call the night before the meeting as well as the meeting itself with the superintendent. The board, in its opinion, reasoned that any "further hearing" would have been superfluous in that it

> "could not have produced more light on the central issue of the statement made which was admitted to by Mr. McCrumb and testified to by all present at the incident, and was the basis for the suspension."

In any event, the board continued, McCrumb waived his right to a § 114 hearing.

McCrumb appealed the county board's decision to the Maryland State Board of Education. The hearing examiner assigned to the matter found the above mentioned Attorney General's Opinion rendered to the State Superintendent of Schools determinative of the first issue: Section 62 accorded the superintendent the independent power to suspend

personnel for cause without prior consultation with the county school board. For the purposes of a § 62 suspension, § 114 was applicable only to define just "cause" for suspension. As to the remaining issues, the examiner concluded that any deprivation of due process not satisfied by McCrumb's meeting with the superintendent was subsequently "cured" by the *de novo* hearing before the county board of education and that there was no evidence that suspension without pay was an inappropriate penalty.[4]

The Maryland State Board of Education, rejecting the hearing examiner's analysis, concluded that the superintendent acted without the scope of his § 62 authority to "suspend for cause." The State board, paralleling even more closely the opinion of the Attorney General, concluded that while the local superintendent of schools has the independent authority to suspend summarily a principal under art. 77, § 62, it was an "emergency power only" which could be used to "solve an immediate crisis and help remove a present threat to the welfare of the school system," and which could not, the board concluded on its own, "involve the imposition of a penalty, such as the forfeiture of pay." Where, the board continued, the situation did not require immediate action or, presumably, where the forfeiture of pay was involved, the superintendent, acting under § 114, was to make his recommendations to the local board of education.

Without explicitly stating which prong it was basing its decision on, the State board concluded that the superintendent exceeded his authority in suspending McCrumb without a board hearing and the county board's affirmance of his actions could not stand. Going further, the State board vacated the decision of the county board and,

---

4. It is interesting to note at this point the source of authority relied upon by the hearing examiner for the proposition that § 62 "enables the superintendent to impose a monetary penalty, *i.e.,* suspension without pay." County Council v. Investors Funding, 270 Md. 403 (1973), cited by the hearing examiner, merely stated, in construing the constitutionality of the Montgomery County Fair Landlord Tenant Relations Act, that the authority to impose a civil monetary penalty was one which could be constitutionally delegated to an administrative agency.

based on the full record before it, concluded that McCrumb's conduct did not warrant suspension, noting that its conclusion might have been otherwise had McCrumb's remarks been of a racist nature.[5]

In an appeal taken by the Howard County Board of Education, the Circuit Court for Howard County (Fischer, J.) affirmed the State board's decision. The circuit court, although disagreeing with the State board's conclusion that personnel are entitled to a full hearing prior to suspension without pay, affirmed on the basis of the State board's conclusion that the penalty was inappropriate.

Addressing first the element of forfeiture of pay, the circuit court concluded that § 6-201, as consistently construed in opinions of the Attorney General and in more recent decisions of the State board, did not in any way preclude a local superintendent's suspension of personnel without pay. The court, noting that to the extent the *McCrumb* opinion of the State board stated otherwise, the board reversed itself in *Robert Waeldner v. Prince George's County Board of Education,* MSBE Op. 81-18, stated:

"To find otherwise would be to flaunt the obvious intention of the Legislature to provide a superintendent with the power to maintain the orderly day-to-day administration of a [c]ounty school system. It seems apparent that the legislature worded § 6-201 in such a way that a superintendent could be able to deal with the exigency of employee misconduct."

As to any due process requirements, the court continued:

"[The Supreme Court has] made it clear that there is no constitutional right to a formal pre-suspension or pre-termination hearing and that all that is required is that the employee be given notice of the

**5.** *See* Resetar v. Board of Education of Montgomery County, MSBE Op. 75-7 (1975); Resetar v. State Board of Education, 284 Md. 537, *cert. denied,* 444 U.S. 838 (1979).

reasons for the action and an opportunity to be heard. [*Arnett v. Kennedy,* 416 U.S. 134 (1974)]."

While the court disagreed with the State board's conclusion that the summary procedure followed by the superintendent exceeded his authority, it sustained the board's conclusion that "while Mr. McCrumb's use of a vulgar expression was not appropriate, it [did] not call for the penalty of suspension." Finding ourselves in agreement with this conclusion of the State board, it is not necessary to discuss a county superintendent's independent powers of suspension under art. 77 or the requirements of due process.

The State Board of Education, which is empowered under art. 77, § 7 to exercise "general control and supervision over the public schools and educational interest of the State," and under § 6 to "determine the educational policies of the State" and "explain the true intent and meaning of the [school] law and . . . decide all controversies and disputes that arise under it and their decision shall be final," has been described as having "peculiarly autonomous powers" in the exercise of its primary jurisdiction to hear personnel matters. *See Board of Education of Anne Arundel County v. Barbano,* 45 Md. App. 27 (1980); *Wilson v. Board of Education,* 234 Md. 561 (1964). As accurately stated many years ago by the Court of Appeals in *Wiley v. School Commissioners,* 51 Md. 401, 406 (1879):

"This is a visitational power of the most comprehensive character; and it has been settled ever since the great case of *Phillips v. Bury,* 2 Term, 346, that such power is, in its nature, summary and exclusive.* * * If every dispute or contention among those entrusted with the administration of the system, or between the functionaries and the patrons or pupils of the schools, offered an occasion for a resort to the courts for settlement, the working of the system would not only be greatly embarrassed and obstructed, but such contentions before the courts would necessarily be attended with great costs and delay, and likely generate such intestine heats and

divisions as would, in a great degree, counteract the beneficent purposes of the law. It is to obviate these consequences that the visitatorial power is conferred; and wherever that power exists, and is comprehensive enough to deal with the questions involved in an existing controversy, as is the case ·here, courts of equity decline all interference, and leave the parties to abide the summary decision of those clothed with the visitatorial authority." Quoted with approval in *Barbano,* 45 Md. App. at 43-44.

The Maryland State Board of Education then is vested with the last word on matters of educational policy or the administration of the system of public education, *Wilson v. Board of Education,* 234 Md. at 561. Our review, like that of the circuit court, of action taken by the State board is limited to whether there was illegality, arbitrariness or unreasonableness in the action. *Resetar v. State Board of Education,* 284 Md. at 553-554.

Clearly the modification of a penalty imposed on personnel by a local board of education is within the State board's broad powers. The mere fact that an initial power to suspend may be within the scope of the local superintendent under § 62 does not negate the power of the State board to review it and set it aside should it conclude differently. *See Wilson v. Board of Education,* 234 Md. at 565. The State board, having acted lawfully, reasonably and not in an arbitrary or capricious fashion, did not exceed that power in concluding that, under the totality of the circumstances, McCrumb's use of the term "assholes" did not constitute cause for suspension.

*Judgment affirmed; costs to be paid by appellant.*