470 A.2d 332

BOARD OF EDUCATION OF PRINCE GEORGE'S
COUNTY, Maryland

v.

Robert WAELDNER.

No. 45, Sept. Term, 1983.

Court of Appeals of Maryland.

Jan. 31, 1984.

Andrew W. Nussbaum and Paul M. Nussbaum, Greenbelt, for appellant.

Susan W. Russell, Baltimore (Walter S. Levin and Weinberg & Green, Baltimore, on the brief) for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

MURPHY, Chief Judge.

Maryland Code (1978), § 6–202(a) of the Education Article authorizes a County Board of Education, upon recommendation of the County Superintendent of Schools, to suspend or dismiss a teacher for immorality, misconduct in office, insubordination, incompetence or willful neglect of duty. Section

6–202(a)(4) authorizes an appeal "from the decision of the county board to the State Board [of Education]."

In this case, appellant Waeldner, a tenured special education teacher in the Prince George's County public school system, was dismissed from his employment by the County Board after a § 6–202(a) disciplinary hearing. He appealed to the State Board which, after a hearing, modified the disciplinary sanction from dismissal to suspension for a designated period of time. The County Board appealed the decision of the State Board to the Circuit Court for Prince George's County; that court affirmed the State Board's decision. On further appeal by the County Board, the Court of Special Appeals affirmed the circuit court's judgment in an unreported opinion. We granted certiorari to consider (1) whether the State Board exceeded its statutory authority when it altered the disciplinary penalty imposed upon Waeldner by the County Board and (2) whether the State Board's decision was arbitrary and capricious.

I.

Waeldner began teaching in the public schools of Prince George's County in 1973. Prior to that time he had been a Catholic priest and teacher in Japan for over twenty years.

At the time of the disciplinary incident involved in this case, Waeldner was teaching grounds keeping and home maintenance to severely retarded males of secondary school age at the Princess Garden Special Center for the mentally handicapped. His teaching objective was to train students to enter the employment market as handymen or custodial workers. Waeldner's teaching program consisted of working with a small group of students in the classroom for several days a week and at various outdoor worksites on the remaining school days. Parental approval was a prerequisite to placement in Waeldner's classes. His teaching performance at Princess Garden was consistently evaluated as excellent by his principal. Examples of the principal's written comments on Waeldner's work included: "excellent rap-

port with staff, parents and community"; "cares for children, understands children, and brings out the best in them." On one occasion, however, Waeldner was admonished by the principal for disciplining a student by isolating him in a clothes locker.

On February 28, 1980, Waeldner, without authorization, left four of his six students under a teaching aide's supervision at the Greenbelt Recreational Center where they were to clean the building and the adjacent grounds. He took the two remaining students with him to work on other grounds keeping projects. One of the boys, Ronald Fluke, was the lowest functioning student in the group that day; the other, Michael Kenyon, age 15, was a new student with a history of disciplinary problems. When it began snowing, Waeldner took the two boys to a workshed located behind his home; he directed them to work on a project at this site. Kenyon became disruptive and began throwing glass bottles and mishandling the saw he was using. Waeldner ordered him to stop his disruptive behavior but to no avail. At this point, Waeldner decided that Kenyon needed to be "timed out," a behavior modification technique used with special education students whereby the student is isolated and kept still in order to calm him and to cause him to reflect on his misbehavior. Waeldner required Kenyon to leave the shed and kneel outside on two wooden blocks under a plastic-covered picnic table for an extended period in below-freezing, snowy weather. During a part of the time that Kenyon was being "timed out" under the picnic table, Waeldner was in his home. Throughout the incident, Fluke remained inside the shed, shivering and shaking from the cold. A neighbor who witnessed the episode called the police who, upon investigation, found Kenyon sobbing and crying aloud; both boys were removed to police headquarters.

In terminating Waeldner's employment, the County Board concluded that in leaving students with a teaching aide, and removing Fluke and Kenyon from an authorized work area to his own home without permission, Waeldner violated the rules and policies of the County Board and was guilty of

misconduct in office and incompetency. In addition, the County Board determined that the "timing out" episode involving Michael Kenyon subjected him to unreasonable punishment in violation of a specified State Board bylaw and also constituted misconduct in office and incompetency.

Upon Waeldner's appeal to the State Board, an agency hearing examiner took additional testimony and filed extensive findings of fact and conclusions of law.[1] He agreed with the County Board that Waeldner's unauthorized action in bringing the two boys to his home and in his "timing out" treatment of Kenyon amounted, under the circumstances, to misconduct in office. He expressed doubt that Waeldner's conduct inflicted unreasonable punishment upon Kenyon in violation of the State Board bylaw. He made no finding as to Waeldner's incompetency. He said:

"Throughout the period of Mr. Waeldner's employment his evaluations have been satisfactory, and on more than one occasion he has been praised for his performance. His patience with and his concern for severely retarded children were testified to by parents who had a great deal of contact with him, and whose judgment is therefore entitled to weight. His practice of timing out children by having them kneel was known to his principal, who had observed the procedure on a number of occasions and had never criticized it."

After considering all of the evidence, including the testimony of parents and other character witnesses on Waeldner's behalf (which the County Board refused to hear), the hearing examiner concluded that dismissal in the circumstances was too severe a penalty. He recommended instead that Waeldner be suspended without pay for a period not to exceed six months commencing from the date of the County Board's decision.

---

1. The record before the County Board was received in evidence by the hearing examiner. The additional testimony, taken pursuant to stipulation of the parties, consisted of witnesses who attested to Waeldner's excellent performance as a special education teacher.

The State Board adopted the hearing examiner's recommended findings and conclusions, except that which found that Waeldner's treatment of Kenyon did not constitute unreasonable punishment in violation of the State Board's bylaw. The State Board agreed with the County Board that the bylaw had been violated. It suspended Waeldner without pay from the date of the County Board's decision through the 1980–81 school year.

The County Board's position on judicial review of the State Board's decision was that once the latter determined that a factual basis existed for the County Board to impose a disciplinary sanction upon Waeldner, it had no authority to modify the punishment thereby imposed but only to determine whether the County Board's dismissal action was authorized. As indicated, both the circuit court and the Court of Special Appeals found no merit in this argument.

## II.

Before us, the County Board vigorously maintains that the power to dismiss a teacher is vested solely in the County Board. It says that the State Board's authority on appeal under § 6–202(a)(4) "is limited to determinations of whether the County Board's actions were irregular or an abuse of authority and whether there is adequate evidence to justify the statutory grounds for dismissal relied upon by the County Board." Accordingly, the County Board argues that the State Board was without power to decide that a penalty less severe than dismissal was warranted and in directing that suspension be the punishment imposed upon Waeldner. The County Board relies primarily on *Halsey v. Board of Education of Garrett County,* 273 Md. 566, 331 A.2d 306 (1975), and *Zeitschel v. Board of Education of Carroll County,* 274 Md. 69, 332 A.2d 906 (1975).

## III.

Our cases have long made clear that the State Board has very broad statutory authority over the administration of

the public school system in this State. Under § 2–205(g)(2) of the Education Article, the State Board is directed to "exercise general control and supervision over the public schools and educational interests of this State." Section 2–205(b) empowers the State Board to "[d]etermine the elementary and secondary educational policies of this State"; § 2–205(c) directs the State Board to "adopt bylaws, rules, and regulations for the administration of the public schools." Section 2–205(e) provides that the State Board "shall explain the true intent and meaning of the provisions of . . . [the Education Article] . . . within its jurisdiction"; the same subsection mandates that the State Board "shall decide all controversies and disputes under these provisions" and further states that "[t]he decision of the Board is final."

The totality of these provisions has been described as a visitatorial power of such comprehensive character as to invest the State Board "with the last word on any matter concerning educational policy or the administration of the system of public education." *Resetar v. State Board of Education,* 284 Md. 537, 556, 399 A.2d 225, *cert. denied,* 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979); *Wilson v. Board of Education,* 234 Md. 561, 565, 200 A.2d 67 (1964). The broad sweep of the State Board's visitatorial power has been consistently recognized and applied since the principle was first enunciated in 1879 in *Wiley v. School Comm'rs,* 51 Md. 401. *See, e.g., Shober v. Cochrane,* 53 Md. 544 (1880); *Underwood v. School Board,* 103 Md. 181, 63 A. 221 (1906); *Zantzinger v. Manning,* 123 Md. 169, 90 A. 839 (1914); *School Commissioners v. Morris,* 123 Md. 398, 91 A. 718 (1914); *School Com. of Car. Co. v. Breeding,* 126 Md. 83, 94 A. 328 (1915). In *Zeitschel, supra,* 274 Md. at 81, 332 A.2d 906, we said: "[T]he power of visitation vested in the State Board is one of general control and supervision; it authorizes the State Board to superintend the activities of the local boards of education to keep them within the legitimate sphere of their operations, and whenever a controversy or dispute arises involving the educational policy or proper adminsitration of the public school system of the State, the

State Board's visitatorial power authorizes it to correct all abuses of authority and to nullify all irregular proceedings."

The scope of the State Board's authority under § 6–202(a)(4) to hear an "appeal" from the "decision" of the County Board in cases involving the suspension or dismissal of a teacher must be ascertained in light of the broad visitatorial powers vested in the State Board under the Education Article.[2] *See Board of Educ., Garrett Co. v. Lendo,* 295 Md. 55, 64, 453 A.2d 1185 (1982). In our view, the legislature did not intend that the State Board's review of the County Board's action in such cases would be restricted to mere determination on the record made before the County Board of whether there was competent and substantial evidence to support that agency's factual determination. On the contrary, we think it evident from the statutory scheme of the Education Article, and the allocation of powers between the State and County Boards, that the legislature intended that the State Board would exercise its independent judgment on the record before it in determining whether disciplinary infractions, as charged, had been established and, if so, whether the sanction imposed was too severe under the circumstances. Otherwise stated, under its visitatorial power, the "last word" or the "final decision" rests with the State Board as to any dispute concerning the administration of the public school system, including whether, under § 6–202(a), teacher misconduct warrants dismissal or a lesser sanction. As we said in *Wilson, supra,* 234 Md. at 565, 200 A.2d 67, the powers of the County Board are subordinate to those of the State Board and the mere fact that the authority to discipline teachers is initially within the scope of the County Board's authority does not negate

2. The Administrative Procedure Act, Maryland Code (1957, 1982 Repl.Vol.), Art. 41, §§ 244–256A, does not delineate the applicable scope of review where one administrative agency is empowered to determine an "appeal" from the decision of another administrative agency. *See,* however, 2 Am.Jur.2d *Administrative Law* §§ 539–549 (1962); 73A C.J.S. *Public Administrative Law and Procedure* §§ 166–171 (1983).

the power of the State Board to review it and set it aside. *See generally* K. Alexander, *School Law,* ch. 4 (1980). It is thus clear that the State Board's reviewing authority under § 6–202(a)(4) is not narrowly focused, as in judicial review of administrative agency decisions under the Administrative Procedure Act, Art. 41, § 255, *i.e.,* to a determination on the record made before the agency of whether its decision violated any constitutional provisions or was in excess of its statutory authority; was made upon unlawful procedure or was affected by other error of law; was unsupported by competent, material and substantial evidence in view of the entire record as submitted; or was otherwise arbitrary or capricious.

## IV.

■ We conclude that the State Board did not exceed its statutory power in this case when it determined, upon its own independent evaluation of the record before it, that the dismissal sanction was not warranted. Nor did the State Board act in excess of its statutory authority in holding that a lengthy suspension was the appropriate remedy in the circumstances and in ordering the imposition of that sanction. In *Resetar, supra,* 284 Md. at 562, 399 A.2d 225, we indicated that the State Board, on reviewing the County Board's decision in a teacher disciplinary proceeding, could consider the teacher's unblemished record as a factor warranting a sanction less than dismissal. And in *Board of Educ., Howard Co. v. McCrumb,* 52 Md.App. 507, 450 A.2d 919 (1982), the Court of Special Appeals flatly held that the modification of a disciplinary penalty imposed on a teacher by the County Board was within the State Board's authority.

Neither *Halsey* nor *Zeitschel,* upon which the County Board places principal reliance, dictates a different result. In each of those cases, the State Board, in reversing a decision by a County Board involving probationary teacher contracts acted in direct contravention of statute or governing bylaw. There is, in the present case, no such inhibiting provision in the Education Article or in the State Board's

bylaws that would restrict the State Board from setting aside the County Board's decision and in imposing a penalty less severe than that ordered by the County Board.

■ Whether the State Board's decision changing the punishment from dismissal to suspension was arbitrary or capricious, and hence reversible upon judicial review under the Administrative Procedure Act, is a different matter. The test to be applied in making this determination is limited to whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. *Resetar, supra,* 284 Md. at 554, 399 A.2d 225; *Insurance Comm'r v. Nat'l Bureau,* 248 Md. 292, 236 A.2d 282 (1967).

The County Board argues:

"No reasoning mind could possibly conclude that forcing a severely retarded child to kneel under a picnic table in twenty-nine degree snowy weather without a hat or coat for a period of anywhere from twenty-five minutes to an hour, after having been warned at least once previously that incarceration in a confined place would be neither permitted nor tolerated, is justifiable or excusable and should be treated with any punishment other than dismissal. The handicapped children of Prince George's County deserve nothing less."

■ It is, of course, elementary that a court, upon judicial review of a decision of an administrative agency, will not substitute its judgment on the facts for that of the agency. *Zeitschel, supra,* 274 Md. at 82, 332 A.2d 906. The State Board in this case considered the evidence of Waeldner's misconduct in light of his excellent teaching performance record, his patience with and concern for his severely retarded students, and the fact that he had an established practice of "timing out" students by having them kneel—a practice known to and approved by both the school principal and the parents of the children (albeit improperly exercised in the circumstances now before us). Other factors taken into account by the State Board appear to have been Waeldner's recognition that he had used poor judgment in his

treatment of Kenyon, that neither Kenyon nor Fluke were injured and that Waeldner's actions, although improper, were motivated by and intended to modify the behavior of a student whom he could not reach by verbal direction and whose destructive behavior posed a threat to the student's own and his fellow student's safety. In view of the State Board's careful consideration of the merits of the case, we cannot say that its decision was arbitrary or capricious.

JUDGMENT AFFIRMED, WITH COSTS.