506 A.2d 625

The **BOARD OF EDUCATION FOR DORCHESTER COUNTY, Maryland**

v.

**Sherri HUBBARD et al.**

**BOARD OF EDUCATION OF GARRETT COUNTY, Maryland**

v.

**GARRETT COUNTY TEACHERS' ASSOCIATION, INC. et al.**

Nos. 90, 20, Sept. Term, 1984.

Court of Appeals of Maryland.

April 2, 1986.

Dorothy A. Beatty (Francis B. Burch, Jr., on brief, Baltimore, and Richard M. Matthews, on brief, Cambridge, Baltimore, for appellant of No. 90.

James R. Whattam (Walter S. Levin, on brief), Baltimore, for appellee of No. 90.

Ralph M. Burnett (Burnett, Eiswert, Crawford & James, P.A., on brief), Oakland, for appellant of No. 20.

James R. Whattam (Walter S. Levin and Weinberg & Green, on brief), Baltimore, for appellee of No. 20.

No. 90 Sept. Term, 1984: Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

No. 20 Sept. Term, 1984: Argued before SMITH, EL-DRIDGE, COLE, RODOWSKY and COUCH, JJ., and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ELDRIDGE, Judge.

The Maryland General Assembly, by Maryland Code (1978, 1985 Repl.Vol.), § 6–408(b)(1) of the Education Article, gave public school employees the right to designate an exclusive negotiating agent empowered to meet with representatives of the local school board and negotiate an agreement relating "to salaries, wages, hours, and other working conditions." Section 6–408(a)(2) of the Education Article further permits the parties to "provide for binding arbitration of the grievances arising under the [collective bargaining] agreement that the parties have agreed to be subject to arbitration."

In the instant cases, the parties raise important questions as to the scope of permissible collective bargaining under these provisions. Despite the importance of these matters, we shall not be able to address them because, in our view, the applicable administrative remedies have not been invoked and exhausted.

## I.

The relevant facts in each of the cases before us are as follows.

### *Board of Education for Dorchester County v. Sherri Hubbard et al.*

Ellen Rindfuss and Sherri Hubbard are tenured classroom teachers employed by the Board of Education for Dorchester County. They are members of the unit of employees represented by Dorchester Educators, Inc., the exclusive collective bargaining representative for non-administrative public school employees in Dorchester County. The collective bargaining representative and the County Board entered into a three-year collective bargaining agreement effective July 1, 1981. The agreement defines a grievance as "a written statement by an aggrieved party that a controversy, dispute or disagreement of any kind or character exists, arising out of or in any way involving interpretation or application of the terms of this agreement." Article 12, paragraph 12.1(B). The agreement provides for a four-step grievance process, culminating in binding arbitration. The first three steps direct a grievance to be taken, first to one's immediate supervisor, second to the school principal or his designated representative, and third to the County Superintendent. If the dispute remains unresolved, the collective bargaining representative may submit the dispute to binding arbitration. The agreement further provides, in Article 12, paragraph 12.2(D), as follows:

"D. Jurisdiction and Authority of Arbitrator

The jurisdiction and authority of the arbitrator and his opinion and award shall be confined to the expressed provision or provisions of this Agreement at issue between the Association and the Board.

He shall have no authority to add to, alter, detract from, amend or modify any provision of this Agreement, or to make any award which will in any way deprive the Board of any of the powers delegated to it

by law and not encompassed in this Agreement. The award of the arbitrator, in writing, except if set aside by a court of competent jurisdiction, shall be final and binding on the aggrieved employee or employees, the Association and the Board...."

The agreement also grants teachers certain substantive rights, including the following:

"Article 4—Teachers' Rights

4.1 No teacher will be disciplined or reduced in rank or compensation without just cause.

\* \* \* \* \* \*

4.9 Evaluation

Teachers shall be evaluated in accordance with *Public School Laws of Maryland* and Board of Education Policy and Procedure."

During the 1982–1983 school year, Rindfuss and Hubbard were subject to formal observation and evaluation of their work performance. Such evaluations are routine, and are designed not only to help the evaluated teacher maintain a high level of teaching proficiency, through feedback and suggestions for improvement, but also to aid the county superintendent in his rating of each teacher's certificate as required by law.

The bylaws of the State Board of Education, Bylaw 13A.07.01.01A, COMAR 13A.07.01.01A, require that each public schoolteacher in Maryland hold a Maryland State Teacher's Certificate.[1] These certificates are issued by the State Superintendent of Schools and are of various types, *e.g.*, "Standard Professional Certificate" or "Advanced Professional Certificate," depending on the teacher's education and experience. Bylaw 13A.07.01.02. Besides being of various types, depending on the teacher's professional background, the certificates are of two classes: first class and

---

1. The bylaws, rules and regulations adopted and published by the State Board of Education have the force of law. Code (1978, 1985 Repl.Vol.), § 2-205(c) of the Education Article.

second class. § 6–103(a) of the Education Article. The State Superintendent must rate each certificate "second class" when first issued. § 6–103(b). Each county superintendent, however, is then required to review and classify the certificate of each teacher in his local system at least once every two years. § 6–103(c). In deciding which class of certificate each teacher is entitled to hold, the county superintendent is statutorily required to consider the teacher's scholarship, executive ability, personality and teaching efficiency. Furthermore, it is the county superintendent's responsibility to keep a record of the class of certificate which each teacher holds.

The formal evaluations of Rindfuss and Hubbard for the 1982–1983 school year rated them unsatisfactory in several areas, and recommended that they be put on second class teacher certificates. Mr. William J. Cotten, the Superintendent of Schools for Dorchester County, after considering these recommendations, rated both teacher's certificates as second class for the 1983–1984 school year. Previously each teacher had been on a first class certificate.

Both teachers were unhappy with the substance of the teacher evaluations, and with their placement on second class certificates. They filed grievances pursuant to the procedures set out in the collective bargaining agreement, but the County Superintendent refused to consider either grievance, stating that his classification of a teacher's certificate was not subject to the grievance procedures.

The teachers sought to have their disputes submitted to binding arbitration. The County Superintendent and County Board refused to submit to arbitration, relying on their position that the classification of teacher certificates is not an arbitrable matter. When the teachers attempted to proceed to arbitration unilaterally, the County Board filed bills of complaint on September 14, 1983, in the Circuit Court for Dorchester County, asking for a declaratory judgment and an order staying arbitration. The Board based its requests for relief on three grounds: 1) that the

disputes were not committed to arbitration under the terms of the collective bargaining agreement; 2) that the power to rate a teacher's certificate is vested by statute in the County Superintendent and the County Board and is not delegable to an arbitrator; and 3) that any review of a decision by a county superintendent and county board concerning the proper teacher's certificate is committed by § 4–205(c) of the Education Article [2] to the State Board of Education and is not delegable to an arbitrator. The cases were consolidated before trial.

The circuit court denied the stay of arbitration, holding that "the disputes in these cases are subject to arbitration." In so holding, the court found that these disputes are within the scope of arbitration under the collective bargaining agreement. The court also found that "there was no illegal or improper delegation to arbitration" and that the disputes at issue are within the scope of permissible collective bargaining under the Education Article.

In deciding that these disputes are within the scope of permissible collective bargaining under the Education Article, the Court relied on what it deemed "persuasive" Pennsylvania authority. *See School District of the City of Erie v. Erie Education Association,* 67 Pa. Cmwlth. 383, 447 A.2d 686, 689 (1982). The court did not discuss the Maryland cases dealing with collective bargaining and arbitration in the public sector. *See Office & Prof. Employees Int'l v. MTA,* 295 Md. 88, 453 A.2d 1191 (1982); *Maryland Cl. Emp. Ass'n v. Anderson,* 281 Md. 496, 380 A.2d 1032 (1977); *Mugford v. City of Baltimore,* 185 Md. 266, 44 A.2d 745 (1945). The court did not interpret the language of § 6–408(b)(1), which authorizes collective bargaining concerning matters "that relate to salaries, wages, hours, and

---

**2.** Section 4–205(c) of the Education Article provides in part that: "[a] decision of a county superintendent may be appealed to the county board if taken in writing within 30 days after the decision of the county superintendent. The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board."

other working conditions," as expressly including disputes over teacher evaluations and the classification of teacher's certificates. Instead, the trial court stated that the statute does not expressly withdraw such disputes from the scope of collective bargaining and that, therefore, the County Board had authority to subject them to binding arbitration.

For these reasons, the circuit court concluded that "[u]nder the facts of these cases, respondents have the election at this point to proceed *either* through the appeal process contemplated by Code ... § 4–205, or through arbitration under the applicable provisions of the Negotiated Agreement." The court, therefore, denied the County Board's requests for relief. By agreement of the parties, however, the trial court stayed the execution of its order pending a decision on appeal.

The County Board took an appeal to the Court of Special Appeals. Before any further proceedings in that court, we granted the County Board's petition for a writ of certiorari.

### Board of Education of Garrett County v. Garrett County Teachers' Association

Barbara Sweitzer and Carole Glotfelty are employed by the Board of Education for Garrett County, as kindergarten teachers at the Broadford Elementary School. They are members of the unit of employees represented by the Garrett County Teachers' Association. The Teachers' Association and the Garrett County Board entered into a three-year collective bargaining agreement, effective July 1, 1982.

The agreement provides for grievance procedures similar to those in the Dorchester County agreement. A grievance is defined as "an unsettled cause of complaint arising between a grievant and the Board over an alleged violation, misinterpretation, or misapplication of the terms of this Agreement." Article II, paragraph A(1). Four procedural levels are described, an informal level and three formal levels. First, the grievant "shall meet and discuss the problem with his immediate supervisor for the purpose of

resolving the matter informally." If the grievance is not resolved informally, the grievant must within ten days file a written grievance with "the appropriate administrator or supervisor who shall hold a conference with the grievant . . . and render a decision" (Level One). If still dissatisfied, the grievant may appeal to the Superintendent. The Superintendent, after holding a conference with the grievant, must render a written decision (Level Two). Finally, the Teachers' Association may appeal the decision of the Superintendent to arbitration (Level Three). The provisions dealing with arbitration provide that "[a]ny grievance concerning the alleged violation of this agreement that has been properly processed through Level One and Level Two of the grievance procedure and has not been settled or waived may be appealed to arbitration procedure by the Association by serving written notice to the Board. . . ." Article II, paragraph C(4)(b).

The agreement also provides, under Article III, titled "WORKING CONDITIONS," as follows:

"F. Class Size

Class size should not be unreasonably large for the grade level and subject matter taught. When class size is determined to be unreasonably large by the teacher, the concern may be presented to the faculty advisory council for administrative review and action. The teacher shall be notified of the action taken within ten (10) days."

During the early part of the 1982–1983 school year, Barbara Sweitzer and Carole Glotfelty decided to question the size of the kindergarten classes which they had been assigned to teach that year. First, the teachers met informally with Wayne R. Johnson, Principal of Broadford Elementary School, and attempted to resolve the dispute. Although he was sympathetic to their concerns, Mr. Johnson was unable to obtain approval from his superiors to grant the relief requested. Next, the two teachers presented their complaints to the Faculty Advisory Council, in accordance with Article III, paragraph F, of the agreement. The Council recommended, *inter alia,* the employment of an

additional kindergarten teacher, but the Council's recommendations were not implemented by the Garrett County Board.

On October 5, 1982, the teachers filed a formal grievance requesting that the Board provide an additional teacher for the kindergarten. The grievance was denied by their supervisor, and they appealed to the Superintendent, Jerome J. Ryscavage. He denied the grievance on the ground that class size "is not grievable under the terms of the agreement...." The teachers' association filed a timely request for arbitration.

The Garrett County Board of Education initially declined to participate in the arbitration proceedings. Upon learning that the American Arbitration Association intended to proceed with arbitration, with or without the Board's participation, the Board filed a declaratory judgment action in the Circuit Court for Garrett County, seeking a stay of the arbitration proceedings and a declaration that class size is not arbitrable. The circuit court stated that class size relates to both educational policy and working conditions. Because class size does affect working conditions, the circuit court found that the matter was subject to arbitration under the Education Article. The court also found that class size is arbitrable under the agreement between the Teachers' Association and the County Board. The parties were ordered to proceed with arbitration. No appeal was taken from that order of the circuit court.

On May 10, 1983, the arbitration hearing was held. On July 1, 1983, the arbitrator issued his decision, finding that the classes assigned to Glotfelty and Sweitzer for the 1982–1983 school years were "unreasonably large" and that the County Board is obligated to take whatever action it can to remedy the situation with the burden on the Board to prove that it has exhausted all avenues of relief.

On July 27, 1983, the Board filed in the Circuit Court for Garrett County a petition to vacate the decision of the arbitrator. After a hearing, the petition to vacate was

denied, and the County Board filed an appeal to the Court of Special Appeals of Maryland. Before argument in that court, we issued a writ of certiorari.

## II.

The Boards of Education argue in this Court (1) that the collective bargaining agreements, under proper principles of construction for agreements of this nature, do not provide for the arbitration of the "education policy" issues in these cases and (2) that, regardless of the meaning of the contract provisions, under state law the resolution of the issues in these cases could not properly be made the subject of collective bargaining and arbitration. In amplification of the second argument, it is contended that the statutory authority of the county boards of education and the State Board of Education to decide the type of questions involved in these cases cannot be "delegated" to an arbitrator under a collective bargaining agreement.

The County Boards' first argument need be reached only if we reject their second argument concerning the statutory authority to bargain collectively over the teacher's certificate and class size issues. A third question, however, is whether a court should in the first instance decide if the teacher's certificate and class size issues are subject to collective bargaining, or whether the decision should initially be made through the statutory administrative process culminating in a decision by the State Board of Education. In other words, should the courts defer to the State Board of Education under principles of primary jurisdiction, at least until the State Board authoritatively decides whether the classification of teacher's certificates and class size are subject to collective bargaining and arbitration. This third question was raised by the Court sua sponte at the oral arguments in these cases.

As Judge Rodowsky recently pointed out for the Court in *Wash. Sub. San. Comm'n v. Mitchell & Best*, 303 Md. 544, 561-562, 495 A.2d 30, 39 (1985), quoting in part from

*Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Arena,* 282 Md. 588, 386 A.2d 1216 (1978):

> "Primary jurisdiction 'is a judicially created rule designed to coordinate the allocation of functions between courts and administrative bodies.' *Maryland Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena, supra,* 282 Md. at 601, 386 A.2d at 1225–26. The doctrine 'comes into play when a court and agency have concurrent jurisdiction over the same matter ... and there is no statutory provision to coordinate the work of the court with that of the agency.' *Id.* at 601, 386 A.2d at 1226 (citation omitted)."

In the situation outlined above, where the General Assembly has provided an administrative remedy and there also exists an independent judicial remedy, and no statute coordinates the two or specifies which is primary, we have ordinarily construed the pertinent enactments to require that the administrative remedy be first invoked and followed. *Sec., Dept. of Hum. Res. v. Wilson,* 286 Md. 639, 645, 409 A.2d 713, 717 (1979); *White v. Prince George's County,* 282 Md. 641, 649, 387 A.2d 260, 265 (1978), and cases there cited. On occasion, however, we have held that the administrative remedy is not primary and that resort may be had to the concurrent judicial remedy without invoking or exhausting the administrative procedures. *See, e.g., Md.-Nat'l Cap. P. & P. Wash. Nat'l Arena, supra.*

Where, however, the administrative remedy is deemed to be primary, this Court has generally held that it must be pursued and exhausted before a court exercises jurisdiction to decide the controversy. *Wash. Sub. San. Comm'n v. Mitchell & Best, supra,* 303 Md. at 553–554, 495 A.2d 260; *Md. Comm'n on Human Rel. v. B.G. & E. Co.,* 296 Md. 46, 50, 459 A.2d 205, 208 (1983); *Md. Comm'n on Human Rel. v. Beth. Steel,* 295 Md. 586, 592, 457 A.2d 1146, 1149 (1983), and cases there cited. As explained in *Sec., Dep't of Human Res. v. Wilson, supra,* 286 Md. at 645, 409 A.2d 713,

"when the Legislature enacts a comprehensive remedial scheme in which a claim is to be determined by an administrative agency and reviewed in an administrative appeal before judicial review is available, it establishes, as public policy, that such a procedure produces the most efficient and effective results. In order to effectuate this public policy, trial courts generally should not act until there has been compliance with the statutory comprehensive remedial scheme."

■ While the failure to invoke and exhaust an administrative remedy does not ordinarily result in a trial court's being deprived of fundamental jurisdiction, nevertheless, because of the public policy involved, the matter is for some purposes treated *like* a jurisdictional question. Consequently, issues of primary jurisdiction and exhaustion of administrative remedies will be addressed by this Court sua sponte even though not raised by any party. *See, e.g., Comm'n on Human Rel. v. Mass Transit*, 294 Md. 225, 232, 449 A.2d 385 (1982); *Sec., Dep't of Human Res. v. Wilson, supra*, 286 Md. at 645, 409 A.2d 713.

In the instant cases, the circuit courts were authorized to entertain actions to stay arbitration or to vacate arbitration awards. *See Bd. of Ed. of Charles Co. v. Ed. Ass'n*, 286 Md. 358, 408 A.2d 89 (1979); Code (1974, 1984 Repl.Vol.), § 3–208 of the Courts and Judicial Proceedings Article; Maryland Rules E2, E4. Nonetheless, for the reasons set forth below, we believe that ultimately the State Board of Education had primary jurisdiction over the question whether the teacher's certificate and class size matters could, under the Education Article of the Code, be made the subject of collective bargaining and arbitration.

### III.

Code (1978, 1985 Repl.Vol.), § 2–205 of the Education Article, sets forth the powers and duties of the State Board of Education. Under § 2–205(g)(2), the State Board is directed to "exercise general control and supervision over the

public schools and educational interests of this State." Section 2-205(b) empowers the State Board to "[d]etermine the elementary and secondary educational policies of this State, and § 2-205(c) directs the State Board to "adopt bylaws, rules and regulations for the administration of public schools." Section 2-205(e) mandates that the State Board "shall decide all controversies and disputes under [the] provisions [of the Education Article]."

In *Board of Educ. of P.G. Co. v. Waeldner*, 298 Md. 354, 470 A.2d 332 (1984), this Court reviewed many cases dealing with the statutory powers of the State Board. Chief Judge Murphy, speaking for the Court, said (298 Md. at 360):

> "The totality of these provisions has been described as a visitatorial power of such comprehensive character as to invest the State Board 'with the last word on any matter concerning educational policy or the administration of the system of public education.' *Resetar v. State Board of Education*, 284 Md. 537, 556, 399 A.2d 225, *cert. denied*, 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979); *Wilson v. Board of Education*, 234 Md. 561, 565, 200 A.2d 67 (1964). The broad sweep of the State Board's visitatorial power has been consistently recognized and applied since the principle was first enunciated in 1879 in *Wiley v. School Comm'rs*, 51 Md. 401. *See, e.g., Shober v. Cochrane*, 53 Md. 544 (1880); *Underwood v. School Board*, 103 Md. 181, 63 A. 221 (1906); *Zantzinger v. Manning*, 123 Md. 169, 90 A. 839 (1914); *School Commissioners v. Morris*, 123 Md. 398, 91 A. 718 (1914); *School Com. of Car. Co. v. Breeding*, 126 Md. 83, 94 A. 328 (1915)."

■ The State Board's broad authority specifically includes the power to interpret the provisions of the Education Article. Section 2-205(e) provides that:

> "... [T]he State Board shall explain the true intent and meaning of the provisions of ... [the Education Article] ... within its jurisdiction ... [and] shall decide all controversies and disputes under these provisions."

■ Furthermore, appeals concerning the intent and meaning of the Education Article are to be taken from the county superintendents to the county boards and then to the State Board. Section 4–205(c) provides:

"Subject to the authority of the State Board under § 2–205(e) of this article, each county superintendent shall explain the true intent and meaning of: (i) The school law; and (ii) The applicable bylaws of the State Board."

The section goes on to state:

"A decision of a county superintendent may be appealed to the county board if taken in writing within 30 days after the decision of the county Superintendent. The decision may be further appealed to the State Board if taken in writing within 30 days after the decision of the county board."

Judge Smith for the Court explained the interplay between these provisions in *Board of Education of Garrett County v. Lendo,* 295 Md. 55, 65–66, 453 A.2d 1185 (1982), quoting from the amicus brief of the Maryland State Teacher's Association:

"1. § 2–205 was intended by the General Assembly as a grant of *original* jurisdiction to the State Board, such that, in the limited instances enumerated in that section, a litigant could go directly to the State Board for a decision without the need for exhausting any lower administrative remedies. Since the category of cases involved deal primarily with statewide issues (i.e., statutes and/or bylaws applicable to *all* county boards of education), no useful purpose would be served by *requiring* a lower level administrator or agency to decide a question of statewide applicability.

"2. § 4–205, on the other hand, vests the State Board with *appellate* jurisdiction over the types of cases therein set forth.

"Thus, in the instance of a case requiring an explanation of the 'true intent and meaning' of a provision of the

Education Article or a State Board bylaw, a litigant has the choice of either going first to the county superintendent under § 4–205 and then on up the appellate ladder, or going directly to the State Board under § 2–205. In this regard, it is important to note that § 4–205(c)(2) states that the county superintendent's obligation to explain the true intent and meaning of the school law is '[s]ubject to the authority of the State Board under § 2–205(e)....' (Emphasis in original.)"

In *Lendo* the State Board argued that it had discretion to refuse to decide appeals taken under § 4–205 from the decisions of a county superintendent and a county board. The Court held that, on the contrary, the State Board is required to hear appeals taken under either section 2–205 or 4–205. *See Hunter v. Board of Education of Montgomery Co.*, 292 Md. 481, 488–489, 439 A.2d 582 (1982).

■ The statutory scheme authorizing collective bargaining with respect to public school employees is set forth in §§ 6–401 through 6–514 of the Education Article. Section 6–402(a) limits the representation authority and § 6–408(b) limits the negotiation authority to "all matters that relate to salaries, wages, hours, and other working conditions." The pertinent statutory sections contain further limitations. For example, § 6–411(a) provides that "[t]his subtitle does not supersede any other provision of the Code or the rules and regulations of public school employers that establish and regulate tenure." Obviously decisions whether the classification of teacher's certificates and the size of classes are subject to collective bargaining involve "the true intent and meaning of the provisions" of the Education Article. And, as previously discussed, §§ 2–205 and 4–205 expressly commit this function to the jurisdiction of the State Board of Education.

■ While administrative agencies generally may interpret statutes, as well as rule upon other legal issues, and while an agency's interpretation of a statute which it admin-

isters is entitled to weight,[3] the paramount role of the State Board of Education in interpreting the public education law sets it apart from most administrative agencies. On the other hand, where we have held that a concurrent judicial remedy may be pursued without the necessity of invoking and exhausting a statutorily prescribed administrative remedy, the legal issue did not involve an interpretation of a law administered by the agency. *See Md.-Nat'l Cap. P. & P. v. Wash. Nat'l Arena, supra,* 282 Md. at 600, 386 A.2d 1216 (construction of a contract provision).

Another reason for judicial deference to the State Board of Education in these cases is that the resolution of these statutory interpretation issues could have a substantial impact upon the State Board. The appellee teachers and collective bargaining representatives have in these cases argued for an extremely broad interpretation of the statutory phrase "all matters that relate to salaries, wages, hours, and other working conditions." Literally, almost any educational matter may relate to an employee's "working conditions" in the broadest sense of the term. In fact, at oral argument before us, one of the counsel for the appellees was unable to produce an example, other than a tenure decision, of an educational matter which would not fall within the scope of collective bargaining under the appellees' reading of the statutory language. If such interpretation is correct, arbitrators could in the future be making many of the educational policy decisions which have heretofore been made by the local boards of education and the State Board of Education.

On the other hand, the General Assembly may have contemplated that a somewhat narrower scope be given to the concept of "matters" relating "to salaries, wages, hours, and other working conditions," perhaps intending (as was argued before us) to draw a line between educational policy matters and wages, hours, salaries and other work-

---

**3.** *See* the discussion in *Comm'n on Human Rel. v. Mass Transit,* 294 Md. 225, 232–233, 449 A.2d 385 (1982).

ing conditions in a narrow sense. If so, such line will be somewhat elusive in many contexts, and application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the matter.

Finally, the State Board of Education has previously assumed jurisdiction to determine whether particular issues fall within the statutory authorization for collective bargaining. *See, e.g., Bricker v. Frederick Co. Bd. of Education,* No. 82–52 (12/15/82) (County Board cannot bargain away its right to choose not to renew probationary teachers with or without cause); *Montgomery Co. Education Association v. Bd. of Education of Montgomery Co.,* No. 70–1 (1/28/70) (disputes concerning the school calendar and job classifications are non-negotiable under the statute).

Consequently, we do not believe that the courts below should have resolved the teacher's certificate and class size issues in these cases until the teachers pursue and exhaust their administrative remedy before the State Board of Education. Once these statutory interpretation questions have been resolved through the administrative and judicial review process, we would agree with the Circuit Court for Dorchester County that a teacher would have an election of remedies. *See Baranski v. Prince George's County,* 41 Md.App. 443, 450, 397 A.2d 265 (1979). Until then, however, primary jurisdiction with regard to these issues is with the State Board of Education.

Upon remand, in No. 90 the Circuit Court for Dorchester County should order a stay of the arbitration, and in No. 20 the Circuit Court for Garrett County should grant the petition to vacate the arbitration award. Optionally the circuit courts, in lieu of entering final judgments in the cases, and in lieu of vacating the arbitration award in No. 20, may in their discretion order that the status quo be maintained and may retain jurisdiction for a reasonable period to give the teachers an opportunity to exhaust their administrative remedies and obtain a final decision from the State Board of Education. If the decision of the State

Board is adverse to the teachers, and if they seek judicial review, the judicial review actions could then be consolidated with the instant cases. *See Offutt v. Montgomery Co. Bd. of Ed.*, 285 Md. 557, 562, 404 A.2d 281 (1979).

JUDGMENTS OF THE CIRCUIT COURTS FOR DORCHESTER COUNTY AND GARRETT COUNTY REVERSED, AND CASES REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEES IN EACH CASE TO PAY COSTS.