888 A.2d 329

## MOTOR VEHICLE ADMINISTRATION

v.

## Carmelina ILLIANO.

No. 28, Sept. Term, 2005.

Court of Appeals of Maryland.

Dec. 16, 2005.

Leight D. Collins, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), for petitioner.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

Following a hearing before the Motor Vehicle Administration ("MVA") on March 9, 2004, Administrative Law Judge Robert Barry suspended the driver's license of Respondent,

Carmelina Illiano,[1] for one year under Maryland Code (1977, 2002 Repl. Vol.), Section 16–205.1(b)(1)(i)(2)(B) of the Transportation Article,[2] for refusing to submit to a chemical breath test.[3] The Circuit Court for Carroll County subsequently found that the police officer who administered the breath test did not possess reasonable grounds to justify the detention of Illiano and reversed the decision to suspend her driver's license.[4] Petitioner, the Motor Vehicle Administration, now presents us with the following question for review:

1. Respondent Illiano did not submit a brief to this Court or participate at oral argument.

2. Maryland Code (1977, 2002 Repl.Vol.), Section 16–205.1 of the Transportation Article states, in relevant part:
 (a)(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.
 (b)(1) Except as provided in subsection (c) of this section, a person may not be compelled to take a test. However, the detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the Administration shall:
 (i) In the case of a person licensed under this title:
 1. For a test result indicating an alcohol concentration of 0.08 or more at the time of testing:
 A. For a first offense, suspend the driver's license for 45 days; or
 B. For a second or subsequent offense, suspend the driver's license for 90 days; or
 2. For a test refusal:
 A. For a first offense, suspend the driver's license for 120 days; or
 B. For a second or subsequent offense, suspend the driver's license for 1 year.

3. A breath test is "[a] test of a person's breath ... to determine alcohol concentration." Maryland Code (1977, 2002 Repl.Vol.), Section 16–205.1(a)(1)(iv)(1) of the Transportation Article.

4. This Court has certiorari jurisdiction over this action because, pursu-

In determining the sufficiency of an officer's sworn certification of reasonable grounds to request a chemical breath test under Maryland Code (1977, 2002 Repl.Vol.), Section 16–205.1(f)(7)(i)(1) of the Transportation Article,[5] did the administrative law judge err in considering evidence obtained by the officer after the motorist was initially detained, where the officer smelled a strong odor of alcohol coming from the motorist's automobile, the motorist told the officer that she had been drinking and she should not be driving, and, after the initial detention, her performance in field sobriety tests exhibited further evidence of impairment? *Motor Vehicle Administration v. Illiano*, 387 Md. 465, 875 A.2d 769 (2005). We hold that, pursuant to Maryland Code (1977, 2002 Repl.Vol.), Section 16–205.1(b)(2) of the Transportation Article, the Administrative Law Judge's determination that the police officer had reasonable grounds to detain Illiano and request a breath test was supported by substantial evidence and was not premised upon an erroneous conclusion of law. Accordingly, we reverse the decision of the Circuit Court.

## I. Background

At approximately two o'clock in the morning on October 30, 2003, Maryland Transportation Authority Police Officer J.

---

ant to Maryland Code (1993, 2002 Repl. Vol), Section 12–305 of the Courts and Judicial Proceedings Article, the Circuit Court has rendered a final judgment in this case on judicial review of an administrative decision under Title 16 of the Transportation Article.

5. Maryland Code (1977, 2002 Repl.Vol.), Section 16–205.1(f)(7)(i)(1) of the Transportation Article, states:

At a hearing under this section, the person has the rights described in § 12–206 of this article, but at the hearing the only issues shall be: 1. Whether the police officer who stops or detains a person had reasonable grounds to believe the person was driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, or while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.

Marll was in a marked patrol car parked on the shoulder of Route 170 in Anne Arundel County operating a stationary radar unit when a Saturn pulled up approximately ten feet behind him and sat idling for a few minutes. Officer Marll decided to check on the well-being of the driver and backed his car alongside the Saturn, at which time the driver, Carmelina Illiano, rolled down her window. Officer Marll detected the smell of alcohol coming from the Saturn and decided to park behind it. While Officer Marll was moving the police car, Ms. Illiano alighted from the Saturn and switched positions with the passenger. After approaching the passenger side window, Officer Marll asked Ms. Illiano why she had stopped on the shoulder to which she replied that she should not be driving because she had consumed one beer and one mixed drink. Observing that her eyes were bloodshot and glassy and that her speech was slurred, the officer requested Ms. Illiano's driver's license and asked her to perform various field sobriety tests. While she was getting out of her car, Ms. Illiano disclosed to Officer Marll that she was coming from Cancun Cantina and that her friend was taking over because Ms. Illiano realized that she should not be driving; Officer Marll further observed that Ms. Illiano leaned on the Saturn for balance while walking.

After Ms. Illiano failed the field sobriety tests,[6] Officer Marll placed her under arrest for Driving Under the Influence and read to her from the DR–15 Form.[7] Initially, Ms. Illiano

---

**6.** Officer Marll administered three tests: the horizontal gaze nystagmus test; the walk and turn test and the one leg stand test:

> The horizontal gaze nystagmus test is an evaluation of the natural moving of the human eye as it follows a horizontally moving point of reference. The presence of alcohol in the body causes the eyes to take on a jerking movement. The walk and turn test requires a person to walk toe-to-heel in a straight line for approximately nine to ten steps. The one leg stand test requires a person to stand on one leg and count out loud for approximately five to ten seconds.

*Lowry v. State,* 363 Md. 357, 362 n. 6, 768 A.2d 688, 690-91 n. 6 (2001).

**7.** We explored the DR–15 Form in *Motor Vehicle Administration v. Atterbeary,* 368 Md. 480, 485–86 n. 1, 796 A.2d 75, 78-79 n. 1 (2002), where we stated:

agreed to take a chemical breath test; she was taken to the Maryland State Police Barracks in Glen Burnie where the test was to be administered. When Ms. Illiano arrived, however, she changed her mind, refused to submit to the test and, thereafter, pursuant to Section 16–205.1(b)(3),[8] Officer Marll

---

The DR–15 Form, sometimes referred to as The Advice of Rights and Administrative Penalties for Refusal to Submit to a Chemical Test statement, is derived from Section 16–205.1(b) of the Maryland Transportation Article; it provides in part:

You have been stopped or detained and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle while intoxicated; under the influence of alcohol; so far under the influence of any drug, any combination of drugs, or a combination of one or more drugs and alcohol, or under the influence of a controlled dangerous substance that you could not drive a vehicle safely; or in violation of an Alcohol Restriction.

In this state, any person who drives or attempts to drive a motor vehicle, including a commercial motor vehicle, on a highway or on any private property that is used by the public in general, is deemed to have consented to take a chemical test to determine the alcohol concentration, or a blood test to determine the drug or controlled dangerous substance content of the person. The chemical test shall be at no cost to you. A test of blood shall be administered if the breath test equipment is unavailable, a test is required to determine the drug or controlled dangerous substance content, or if your injuries require medical treatment. The results of such test or a refusal of such test may be admissible as evidence in any criminal prosecution.

\* \* \*

You have the right to refuse to submit to the test. If you refuse: The Motor Vehicle Administration (MVA) will be notified of your chemical test refusal; your Maryland (MD) driver's license shall be confiscated; an Order of Suspension issued, and if eligible, a temporary license issued, valid for 45 days. An Administrative suspension shall be imposed by the MVA against your MD driver's license or driving privilege if you are a nonresident. The suspension shall be 120 days for a first offense and 1 year for a second or subsequent offense. You will be ineligible for modification of the suspension or issuance of a restrictive license; except in certain circumstances, a test refusal suspension may be modified and a restrictive license issued, if you agree to participate in the Ignition Interlock Program for at least 1 year.

8. Maryland Code (1977, 2002 Repl.Vol.), Section 16–205.1(b)(3) of the Transportation Article provides in relevant part:

If the person refuses to take the test or takes a test which results in an alcohol concentration of 0.08 or more at the time of the testing, the police officer shall:

confiscated Ms. Illiano's driver's license, served her with an order of suspension for one year,[9] issued her a temporary license, and informed her of her right to a hearing and the required administrative sanctions.

At the administrative show cause hearing held on March 9, 2004, Ms. Illiano, represented by counsel, contended that the officer never drove abreast of her car, but instead made a U-turn and immediately parked behind her; that she never told Officer Marll that she should not have been driving; that her difficulty performing the field sobriety tests was due to her poor grasp of the English language and her inability to understand Officer Marll's directions and that she switched seats with the passenger because she was having difficulty driving due to a damaged tendon on the top of her foot. In his findings of fact, ALJ Barry stated:

I do find by a preponderance of the evidence in this record that the officer had reasonable grounds to believe the licensee was driving a motor vehicle while under the influence of alcohol or while impaired by alcohol.... I don't have any problems finding Ms. Illiano in violation of Section

---

(i) Confiscate the person's driver's license issued by this State;

(ii) Acting on behalf of the Administration, personally serve an order of suspension on the person;

(iii) Issue a temporary license to drive;

(iv) Inform the person that the temporary license allows the person to continue driving for 45 days if the person is licensed under this title;

(v) Inform the person that:

1. The person has a right to request, at that time or within 10 days, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results indicating an alcohol concentration of 0.08 or more at the time of testing, and the hearing will be scheduled within 45 days;

\* \* \*

(vi) Advise the person of the administrative sanctions that shall be imposed in the event of failure to request a hearing, failure to attend a requested hearing, or upon an adverse finding by the hearing officer....

9. Because this was Illiano's second violation of Section 16–205.1 within five years, Section 16–205.1(b)(1)(i)(2)(B) requires that her license be suspended for one year.

16–205.1. Frankly, I find Ms. Illiano's version of events to be totally not credible, not even a close call in this matter. There's a total—I mean as far as basically from the beginning, she admits that she's out with her friend at a club. She's indicated she only had this half a glass of bitter wine and a rum and Coke, and wants me to believe that all the problems here were not—the problems with the test didn't have to do with the consumption of alcohol, but with this foot problem. The evidence that I have on the foot problem is that the injury actually goes back to August of 2002, and the podiatrist, Dr. Seider, has indicated the nerve damage and [sic] may cause difficulty with ambulation and balance. But the evidence of the impairment in this case goes beyond that. We have the bloodshot, glassy eyes, the slurred speech, and I believe the licensee made the admissions to the officer. People driving up behind police when they're intoxicated doesn't shock me. I've had cases where people have driven into the police station drunk to pick up their friend, who had been arrested earlier in the night, drunk. People do things when they're intoxicated they wouldn't ordinarily do when sober. I believe that Ms. Illiano was quite intoxicated that night, pulled over, decided not to drive for whatever reason, performed—couldn't even stand up, basically. I believe very little of what Ms. Illiano said here today, so I do find her in violation of Section 16–205.1.

Accordingly, ALJ Barry upheld the one-year suspension of Ms. Illiano's driver's license.

Ms. Illiano filed a Petition for Judicial Review of ALJ Barry's decision in the Circuit Court for Carroll County pursuant to Maryland Code (1984, 1999 Repl.Vol.), Section 10–222 of the State Government Article. Finding that Section 16–205.1(b)(2) "clearly requires that an officer have reasonable grounds for detaining someone for driving under the influence of alcohol," the judge held that "any results of the field sobriety tests would be irrelevant in determining whether the officer had reasonable grounds to detain Petitioner to perform these tests," and concluded:

In reviewing the record, the transcript, and specifically the ALJ's decision, the ... decision was arbitrary and capricious. The fact that Petitioner admitted to attending a club and that she had one or two drinks is not sufficient to conclude that she was driving under the influence. Nor is the fact that there was a strong odor of alcohol being emitted from the car, not any particular passenger, conclusive.... The Court further finds that there was no substantial evidence to conclude that the officer had reasonable grounds to detain Petitioner. The issue is not fairly debatable and must be reversed.

In so doing, the court reversed ALJ Barry's decision to suspend Ms. Illiano's license and remanded the matter to the Motor Vehicle Administration for further proceedings in compliance with the order.

## II. Standard of Review

Section 10–222 of the Maryland Administrative Procedure Act, Md.Code (1984, 2002 Repl.Vol.), § 10–222 of the State Government Article, delineates that a court, upon judicial review of an administrative agency's decision, may decide to: [10]

(1) remand the case for further proceedings;

(2) affirm the final decision; or

(3) reverse or modify the decision if any substantial right of the petitioner may have been prejudiced because a finding, conclusion, or decision:

(i) is unconstitutional;

(ii) exceeds the statutory authority or jurisdiction of the final decision-maker;

(iii) results from an unlawful procedure;

(iv) is affected by any other error of law;

---

**10.** As we noted in *Motor Vehicle Administration v. Lytle,* 374 Md. 37, 56 n. 5, 821 A.2d 62, 73 n. 5 (2003), "[t]he MVA has delegated to the [Office of Administrative Hearings] in cases such as the present one [which is contested] the responsibility to conduct the evidentiary hearing and render the final administrative decision of the agency." *See* COMAR 11.11.02.07.

(v) is unsupported by competent, material, and substantial evidence in light of the entire record as submitted; or

(vi) is arbitrary and capricious.

In *Maryland Aviation Administration v. Noland*, 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005), Judge Eldridge, writing for this Court, thoroughly examined the standard of review of an adjudicatory decision by an administrative agency, stating:

A court's role in reviewing an administrative agency adjudicatory decision is narrow, *United Parcel v. People's Counsel*, 336 Md. 569, 576, 650 A.2d 226, 230 (1994); it "is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determine if the administrative decision is premised upon an erroneous conclusion of law." *United Parcel*, 336 Md. at 577, 650 A.2d at 230. *See also* Code (1984, 1995 Repl.Vol.), § 10–222(h) of the State Government Article; *District Council v. Brandywine Enterprises, Inc.*, 350 Md. 339, 349, 711 A.2d 1346, 1350–51 (1998); *Catonsville Nursing v. Loveman*, 349 Md. 560, 568–69, 709 A.2d 749, 753 (1998).

In applying the substantial evidence test, a reviewing court decides "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached." *Bulluck v. Pelham Wood Apts.*, 283 Md. 505, 512, 390 A.2d 1119, 1123 (1978). *See Anderson v. Dep't of Public Safety*, 330 Md. 187, 213, 623 A.2d 198, 210 (1993). A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. *CBS v. Comptroller*, 319 Md. 687, 698, 575 A.2d 324, 329 (1990). A reviewing court "must review the agency's decision in the light most favorable to it; . . . the agency's decision is prima facie correct and presumed valid, and . . . it is the agency's province to resolve conflicting evidence" and to draw inferences from that evidence. *CBS v. Comptroller, supra*, 319 Md. at 698, 575 A.2d at 329, quoting *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 834–35, 490 A.2d 1296, 1301 (1985). *See Catonsville Nursing v. Loveman, supra*, 349 Md. at 569, 709 A.2d at 753 (final agency decisions "are

*prima facie* correct and carry with them the presumption of validity").

Despite some unfortunate language that has crept into a few of our opinions, a court's task on review is *not* to "substitute its judgment for the expertise of those persons who constitute the administrative agency," *United Parcel v. People's Counsel, supra,* 336 Md. at 576–77, 650 A.2d at 230, quoting *Bulluck v. Pelham Wood Apts., supra,* 283 Md. at 513, 390 A.2d at 1124. Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts. *Lussier v. Md. Racing Commission,* 343 Md. 681, 696–97, 684 A.2d 804, 811–12 (1996), and cases there cited; *McCullough v. Wittner,* 314 Md. 602, 612, 552 A.2d 881, 886 (1989) ("The interpretation of a statute by those officials charged with administering the statute is . . . entitled to weight"). Furthermore, the expertise of the agency in its own field should be respected. *Fogle v. H & G Restaurant,* 337 Md. 441, 455, 654 A.2d 449, 456 (1995); *Christ v. Department of Natural Resources,* 335 Md. 427, 445, 644 A.2d 34, 42 (1994) (legislative delegations of authority to administrative agencies will often include the authority to make "significant discretionary policy determinations"); *Bd. of Ed. for Dorchester Co. v. Hubbard,* 305 Md. 774, 792, 506 A.2d 625, 634 (1986) ("application of the State Board of Education's expertise would clearly be desirable before a court attempts to resolve the legal issues").

*Id.* at 571–72, 873 A.2d at 1154–55, quoting *Board of Physician Quality Assurance v. Banks,* 354 Md. 59, 67–69, 729 A.2d 376, 380–81 (1999) (footnote omitted).

## III. Discussion

Section 16–205.1 of the Transportation Article, also known as Maryland's Implied Consent Law, which provides for the suspension of driving privileges when a driver refuses to

submit to a chemical breath test for intoxication, states in part:

> (a)(2) Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State *is deemed to have consented*, subject to the provisions of §§ 10–302 through 10–309, inclusive, of the Courts and Judicial Proceedings Article, *to take a test* if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title.

(emphasis added). Section 16–205.1(b)(2) [11] defines the process an officer is to follow before requesting that a driver submit to a chemical breath test:

> [I]f a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of § 16–813 of this title, and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:
>
> (i) Detain the person;
>
> (ii) Request that the person permit a test to be taken;
>
> (iii) Advise the person of the administrative sanctions that shall be imposed for refusal to take the test, including ineligibility for modification of a suspension or issu-

---

11. All references hereinafter to Section 16–205.1 are to the Transportation Article of the Maryland Code (1977, 2002 Repl.Vol.).

ance of a restrictive license under subsection (n)(1) or (2) of this section.

The MVA contends that ALJ Barry was correct in concluding that Officer Marll acted on reasonable grounds in requesting that Ms. Illiano take a chemical breath test based upon his observations made after the initial stop and that the Circuit Court was incorrect in superimposing a requirement upon the officer that he have reasonable grounds to suspect Ms. Illiano of driving under the influence at the time of the initial stop. The Circuit Court's interpretation of Section 16–205.1(b)(2), the MVA submits, prohibits the consideration of any subsequent events, such as the results of field sobriety tests, that the officer may observe, after the initial detention in determining whether the officer had reasonable grounds to detain the driver for the purpose of administering a chemical breath test. The MVA asserts that the Circuit Court conflates the statutory criteria of Section 16–205.1(b)(2) from "stop or detain" to "stop and detain," whereas the statute in fact incorporates a two-part process whereby the officer initially stops the driver, then acquires reasonable grounds to believe a drunk driving offense has occurred and thereafter continues to detain the driver for the purpose of requesting a chemical breath test. Based on this interpretation, the MVA argues, there was more than sufficient evidence to establish that the officer had reasonable grounds to suspect Ms. Illiano of driving while under the influence and to request that she take a chemical breath test. According to the MVA, the ALJ's decision should, therefore, be affirmed.

The Circuit Court, in its opinion, stated that "the reviewing court may substitute its own judgment, if the decision was based solely on an error of law." As a preliminary matter, we have previously disapproved of the use of the language that the reviewing court may "substitute the court's judgment" to describe the analysis undertaken in judicial review of legal issues. *See Noland,* 386 Md. at 573 n. 3, 873 A.2d at 1155 n. 3, citing *Banks,* 354 Md. at 68–69, 729 A.2d at 381. As we have noted:

The "substituted judgment" language is misleading and inaccurate for several reasons. It suggests, with respect to legal issues, that no deference whatsoever is owed to the agency's decision. That is not the law. . . . [T]he agency's interpretations and applications of the statutory or regulatory provisions "which the agency administers should ordinarily be given considerable weight by reviewing courts."

*Noland*, 386 Md. at 573 n. 3, 873 A.2d at 1155 n. 3, quoting *Banks*, 354 Md. at 68, 729 A.2d at 381.

■ Even after giving that deference, it is ultimately for the court to determine whether an error of law was made. We still must decide, therefore, whether ALJ Barry's determination that, under Section 16–205.1, an officer may stop a driver for any legitimate reason and then detain that individual to administer chemical breath tests, after developing reasonable grounds to believe that the driver was driving under the influence of alcohol was premised on an erroneous conclusion of law, because although we generally imbue the statutory interpretation of the agency with considerable weight, "when a statutory provision is entirely clear, with no ambiguity whatsoever, 'administrative constructions, no matter how well entrenched, are not given weight.' " *Noland*, 386 Md. at 572, 873 A.2d at 1155, quoting *Banks*, 354 Md. at 69 n. 2, 729 A.2d at 381 n. 2. To determine whether ALJ Barry's interpretation of Section 16–205.1 is erroneous, we must address the issue of whether, after having made what may be characterized as a routine stop, it is reasonable for the police officer to further detain the driver for the purpose of administering a chemical breath test based upon facts developed after the initial stop. The answer clearly is "yes" based on the plain language of the statute.

Section 16–205.1(b)(2) provides that if a police officer "stops or detains" an individual who the officer has reasonable grounds to believe is driving under the influence, the officer may request that the person submit to a breath test. Md. Code (1977, 2002 Repl.Vol.), § 16–205.1(b)(1) of the Transportation Article. The use of the conjunction "or" indicates that

the officer may have reasonable grounds to believe that the driver is under the influence either at the time of the stop or, due to events occurring after the stop, when the stop transforms into a detention during which the breath test is administered. The decision to utilize the phrase "stop or detain" serves to disjoin the stop from the detention and permits reasonable grounds to arise *post-stop* to justify the detention and request for a breath test.

■■ We repeatedly have stated that a police officer may stop a driver for a myriad of reasons, such as "to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with intent to issue a citation or warning." *State v. Green,* 375 Md. 595, 609, 826 A.2d 486, 494 (2003), quoting *Ferris v. State,* 355 Md. 356, 369, 735 A.2d 491, 497–98 (1999). Some examples of permissible traffic stops, other than for driving under the influence, include: failure to properly display registration plates on the vehicle, Maryland Code, (1977, 2002 Repl.Vol.), Section 13–411 of the Transportation Article; failure to drive on the right side of the roadway, Maryland Code, (1977, 2002 Repl.Vol.), Section 21–309 of the Transportation Article; failure to yield the right of way upon entering onto a highway, Maryland Code, (1977, 2002 Repl.Vol.), Section 21–403 of the Transportation Article; failure to yield the right of way to an emergency vehicle, Maryland Code, (1977, 2002 Repl.Vol.), Section 21–405 of the Transportation Article; and, failure to come to a complete stop at a stop sign, Maryland Code, (1977, 2002 Repl.Vol.), Section 21–707 of the Transportation Article, among others. A police officer also may stop a motor vehicle where the officer has a "reasonable belief that 'criminal activity is afoot.' " *Rowe v. State,* 363 Md. 424, 433, 769 A.2d 879, 884 (2001). Moreover, a police officer may stop or detain a driver in what is known as a "consensual encounter," where the officer approaches a driver on the street, or in another public place, and the driver cooperates in responding to the officer's non-coercive questioning. *See Green,* 375 Md. at 609, 826 A.2d at 494, quoting *United States v. Werking,* 915 F.2d 1404, 1408 (10th Cir.1990); *Ferris v. State,* 355 Md. 356, 373 n. 4, 735 A.2d 491, 500 n. 4 (1999).

This Court has affirmed numerous ALJ decisions permitting the administration of chemical breath tests in situations where the initial stop was not for driving under the influence of alcohol, but for any number of related reasons. In *MVA v. Jones*, 380 Md. 164, 844 A.2d 388 (2004), the officer initially stopped a driver because his vehicle was facing sideways across the northbound traffic lanes of Interstate 95 and, when the officer pulled up behind the vehicle, the driver made a U-turn on Interstate 95 and began driving southbound into oncoming traffic. The police officer stopped Jones for his multiple traffic violations. After he was stopped, the officer observed that Jones had difficulty standing, smelled of alcohol, and performed poorly on the administered field sobriety tests. We upheld the ALJ's determination that there was sufficient evidence to believe that the police officer had acted upon reasonable grounds in requesting a chemical breath test based upon the officer's observation made after the initial stop. *Id.* at 168, 844 A.2d at 390.

In *MVA v. McDorman*, 364 Md. 253, 772 A.2d 309 (2001), the police officer initially stopped a driver after observing that the driver's truck was parked alongside a curb facing the wrong direction of the street. Subsequent to the stop, the officer noted that McDorman smelled of alcohol and failed a field sobriety test. We upheld the ALJ's finding that there was sufficient evidence to believe that the officer had reasonable grounds to request a chemical breath test where the indicia of alcohol use arose after the initial stop. *Id.* at 262, 772 A.2d at 315. Likewise in *MVA v. Richards*, 356 Md. 356, 739 A.2d 58 (1999), the police officer, while patrolling an area that had recently experienced a rash of vehicle thefts and burglaries, initially stopped a vehicle at 12:30 a.m. after it had driven down a dead-end street and turned around without stopping at any of the homes on the street which, in light of the recent automobile thefts, aroused the officer's suspicion. When speaking to the driver, the police officer noticed a strong odor of alcohol and asked Richards to perform field sobriety tests, which he failed. We upheld the ALJ's determination that the officer had reasonable grounds to request a

chemical breath test based upon the circumstances observed after the initial stop. *Id.* at 378, 739 A.2d at 71. *See also MVA v. Lytle,* 374 Md. 37, 46–47, 821 A.2d 62, 67 (2003) (upholding suspension where officer's initial stop was because driver was speeding, then officer detected a strong scent of alcohol, that driver's eyes were bloodshot and glassy, speech was slurred, and the driver failed field sobriety tests); *Lowry v. State,* 363 Md. 357, 768 A.2d 688 (2001) (upholding conviction where officer stopped driver for failing to obey a proper traffic control device and subsequently administered a breath test); *Embrey v. MVA,* 339 Md. 691, 692–93, 664 A.2d 911, 912 (1995) (upholding suspension of driver's license where officer stopped driver after observing defendant driving at a high rate of speed, then noted strong scent of alcohol coming from driver and that the driver performed poorly on field sobriety tests, which provided grounds for breath test).

Based on the plain meaning of Section 16–205.1(b)(2) and this Court's jurisprudence, we conclude that ALJ Barry's determination that "stop or detain" permits police officers to develop a reasonable belief that a driver was driving under the influence *after* making the initial stop is not "premised on an erroneous conclusion of law." *Noland,* 386 Md. at 574 n. 3, 873 A.2d at 1156 n. 3, quoting *United Parcel v. People's Counsel,* 336 Md. 569, 577, 650 A.2d 226, 230 (1994).

█ Having concluded that ALJ Barry's interpretation of Section 16–205.1 was clearly correct, we turn to our review of his factual finding that Officer Marll had reasonable grounds to detain Ms. Illiano for driving under the influence of alcohol and to ask that Ms. Illiano take a chemical breath test. The substantial evidence test, set forth in Section 10–222(h)(3)(v) of the Administrative Procedure Act, Md.Code (1984, 2004 Repl. Vol.), § 10–222(h)(3)(v) of the State Government Article, requires that an agency's factual determination be supported by "competent, material, and substantial evidence in light of the entire record as submitted." We have further explicated the concept of substantial evidence:

In applying the substantial evidence test, a reviewing court decides whether a reasoning mind reasonably could have reached the factual conclusion the agency reached. A reviewing court should defer to the agency's fact-finding and drawing of inferences if they are supported by the record. A reviewing court must review the agency's decision in the light most favorable to it[, and] the agency's decision is prima facie correct and presumed valid.

*Board of Physician Quality Assurance v. Mullan,* 381 Md. 157, 172, 848 A.2d 642, 651 (2004), quoting *Banks,* 354 Md. at 68, 729 A.2d at 380–81 (citations omitted).

The record in the instant case indicates that Officer Marll detected a strong odor of alcohol emanating from Ms. Illiano's vehicle, that Ms. Illiano stated that she stopped because she should not be driving, and that she admitted to having consumed two alcoholic drinks. Officer Marll, according to the record, asked her to perform field sobriety tests and observed that Ms. Illiano's eyes were bloodshot and glassy and that her speech was slurred. The record also states that Ms. Illiano failed the field sobriety tests. At the hearing Ms. Illiano testified and denied that she had consumed two alcoholic drinks earlier in the evening. She also explained that her stop behind Officer Marll's car and her inability to pass the field sobriety tests were caused by an injury to her foot and her inability to fully understand spoken English.

 Based on the evidence in the record, a reasoning mind reasonably could have reached the factual conclusion of ALJ Barry. Indeed, " 'not only is it the province of the agency to resolve conflicting evidence, but where inconsistent inferences from the same evidence can be drawn, it is for the agency to draw the inferences.' " *Gigeous v. ECI,* 363 Md. 481, 504, 769 A.2d 912, 926 (2001), quoting *Bulluck v. Pelham Wood Apts.,* 283 Md. 505, 513, 390 A.2d 1119, 1124 (1978). We give great deference to the agency's assessment of the credibility of the witnesses. *Schwartz v. Md. Dept. of Natural Resources,* 385 Md. 534, 554, 870 A.2d 168, 180 (2005). Thus, we conclude that ALJ Barry's determination that Officer

Marll had reasonable grounds to detain Ms. Illiano for driving under the influence of alcohol and to request that she submit to a breath test is supported by substantial evidence.

## Conclusion

For these reasons, we reverse the judgment of the Circuit Court and direct that court to affirm ALJ Barry's decision upholding the one-year suspension of Ms. Illiano's driver's license.

*JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO AFFIRM THE DECISION OF THE MOTOR VEHICLE ADMINISTRATION. COSTS TO BE PAID BY RESPONDENT.*